Commonwealth of Pennsylvania, Department of Transportation, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission, Appellee, and County of Allegheny, Intervening Appellee.

Argued September 9, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Louis G. Cocheres,* Assistant Attorney General, with him *Herbert G. Zahn,* Assistant Attorney General, and

*Robert W. Cunliffe,* Deputy Attorney General, for appellant.

*R. Knickerbocker Smith, Jr.,* Assistant Counsel, with him *Edward J. Morris,* Counsel, for appellee.

*Sheldon L. Keyser,* Assistant County Solicitor, with him *Stephen A. Zappala,* County Solicitor, for intervening appellee.

OPINION BY JUDGE ROGERS, October 24, 1975:

This is an appeal from an order of the Pennsylvania Public Utility Commission (Commission) allocating the costs of the repair and restoration of the bridge structure carrying State Highway Route 736 Extension over Thompson Run in the City of Duquesne, Allegheny County, and directing the Pennsylvania Department of Transportation (Department) to perform maintenance on the bridge and its approaches in the future. The Commission ordered that the $189,375.35 costs of repair and restoration be borne 60% by the Department, 30% by Allegheny County, and 10% by the City of Duquesne.

A partial history of this case is contained in the opinion of Judge MENCER in support of our order of remand to the Commission for specific findings of fact in *Commonwealth v. Pennsylvania Public Utility Commission and County of Allegheny,* 18 Pa. Commonwealth Ct. 160, 335 A.2d 539 (1975). That history may be supplemented by noting that on October 19, 1926 the then Pennsylvania Public Service Commission issued an order placing the responsibility for the maintenance of the bridge in question upon the County of Allegheny, with 40% of the cost of such maintenance to be reimbursed by the City of Duquesne; and that on or about May 1, 1962, pursuant to the Act of September 18, 1961, P.L. 1389, *as amended,* 36 P.S. §1758-101 et seq., the bridge was taken over by the Commonwealth of Penn-

sylvania. The action of the Commonwealth in taking the bridge was preceded by the filing with the Department of a resolution of the Commissioners of Allegheny County consenting to the transfer, which recited that the County had theretofore maintained the bridge, that all contracts for the improvement thereof had been completed and that henceforth the bridge should be maintained, repaired and constructed as other State highways.

In compliance with our order of remand, the Commission has made findings of fact as directed and adhered to the substantive provisions of its earlier order allocating costs and imposing the duty of future maintenance on the Commonwealth. The Department has again appealed, presenting four questions for our consideration and disposition:

I

The Department contends that the Act of September 18, 1961, P.L. 1389, *as amended,* 36 P.S. §1758-101 et seq., does not transfer to the Commonwealth, with respect to bridges located in Third Class Cities, the obligation of future maintenance in cases where earlier Commission orders have imposed the duty of maintenance on counties, and, alternatively, that the Act in all cases limits the Commonwealth's obligation for maintenance to the base or surface courses of such bridges.

The Department's authority for the first proposition is the following portion of the first paragraph of Section 103 of the Act:

"Upon the taking over for construction and maintenance by the Commonwealth of any of the highways or sections thereof, bridges, tunnels, viaducts or approaches thereto specified in this act, the Commonwealth shall thereafter assume all rights, obligations and liabilities of the county, except for any outstanding construction or reconstruction obligations and liabilities in effect at the time of such transfer relat-

ing to said highways or sections thereof, bridges, tunnels, viaducts or approaches thereto, whether the same arise by virtue of any order of the Public Service Commission, the Pennsylvania Public Utility Commission, by contract or otherwise, with respect to those highways, bridges, tunnels, viaducts and approaches thereto designated in section 101, which are located in cities of the second class and third class." 36 P.S. §1758-103.

The Department's argument is founded on a paraphrase of the provision just quoted. By disingenuously transposing the word "outstanding" from its position immediately before the phrase "construction or reconstruction obligations and liabilities" to a position immediately preceding the phrase "order of the Public Service Commission, [etc.]," it produces a reading exempting the Commonwealth from future maintenance of transferred bridges located in Cities of the Third Class in any case where previous Commission orders placed maintenance responsibility on counties. This is not what the section states; rather, it provides that the Commonwealth shall not become responsible upon the take over of bridges for outstanding construction or reconstruction obligations. The resolution of the Commissioners of Allegheny County, required by the Act as a prerequisite to the transfer and duly filed with the Department (as well as the Public Utility Commission), recites that there were no such outstanding obligations and there was no proof produced in these hearings that any such obligations existed when the Commonwealth took the bridge.

The Department depends for support of its second argument based on the Act on the following further provisions of Section 103, 36 P.S. §1758-103:

"This article is not intended and shall not be construed:

. . . .

"(2) To place upon the Commonwealth any obligations for maintenance, construction, reconstruction or resurfacing other than the base or surface courses. The maintenance authorized by this article shall not include snow removal or street cleaning and shall be limited to the portions between existing curb lines available to vehicular traffic."

The Department would have us construe this language as referring to all cases of transfer of bridges under the Act. Such a construction would be in direct conflict with Section 101 of the Act, 36 P.S. §1758-101, which provides:

"All or part of the following various public highways, or sections thereof, *bridges,* tunnels, viaducts and approaches thereto, in counties, shall, if and when the county commissioners consent thereto by resolution a copy of which shall be filed in the office of the clerk of the courts of the proper county and with the Department of Highways, be adopted by the Commonwealth as a State highway, and shall thereafter be *maintained, repaired and constructed in the same manner with like power and authority as provided by the laws of the Commonwealth applicable to State highways;* however, no highway bridge viaduct or approach thereto shall be taken over by the Commonwealth under the provisions of this act if a contract for the improvement thereof has been entered into between a contractor and the Commonwealth or local authorities, or both, until such contract shall have been completed." (Emphasis supplied.)

The provision relied on by the Commonwealth in our view obviously refers to the Commonwealth's obligation with respect to the maintenance of highways, not bridges.

Finally, the effect sought to be given to the Act of September 18, 1961, P.L. 1389, *as amended,* 36 P.S. §1758-101 et seq., ignores the established principle that in case of conflict between the State Highway Law and

Section 411(a) of the Public Utility Law[1] the latter, giving the Commission exclusive jurisdiction over highway-rail crossing proceedings, must prevail. *Department of Highway v. Pennsylvania Public Utility Commission,* 198 Pa. Superior Ct. 87, 182 A.2d 267 (1962).

## II

The Department next contends that Section 411(a) of the Public Utility Law, giving the Commission the power to allocate costs in crossing cases in "proper proportions," is unconstitutional because it does not provide definite standards, policies and limitations to which the Commission must adhere in making such determinations. Its legal authority for its position is a dissenting opinion of Judge, now Justice, MANDERINO, in *Pennsylvania Public Utility Commission v. Department of Transportation,* 2 Pa. Commonwealth Ct. 144, 149, 276 A.2d 573, 575 (1971). The Department has misread Justice MANDERINO's dissent which does not express the opinion that Section 411(a) is unconstitutional, but that the Commission's exercise of the power thereby delegated without first establishing standards is unconstitutional. In any case, we are not inclined to disturb long established rulings that the Commission in apportioning is not limited to any fixed rule, but that all relevant factors must be taken into consideration with the fundamental requirement being that the order be just and reasonable. *Erie Railroad Company v. Public Service Commission,* 271 Pa. 409, 114 A. 357 (1921); *Erie Lackawanna Railway Company v. Pennsylvania Public Utility Commission,* 2 Pa. Commonwealth Ct. 396, 278 A.2d 188 (1971); *Pittsburgh Railways Company v. Pennsylvania Public Utility Commission,* 198 Pa. Superior Ct. 415, 182 A.2d 80 (1962).

---

1. Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1181(a).

## III

The Department further contends that the imposition upon it of 60% of the cost of restoring the bridge was unreasonable. The Commission had before it evidence that the bridge was constructed in 1926, that the County of Allegheny produced records still in its possession of the expenditure on maintenance of $39,477.68 during part of the period from 1926 to 1962, and that the Department had apparently expended nothing on maintenance after 1962 and, indeed, had during that time inspected the bridge only once. The Commission found that the unsatisfactory conditions of the bridge in 1970 resulted from general deterioration due to age and not from deferred maintenance—a finding fully justified in the light of the failure of the Department to adduce evidence tending to show the condition of the bridge when it assumed responsibility in 1962, or that any of the work it performed in pursuance of the Commission's orders in this matter were necessitated by maintenance deferred by the County from 1929 until 1962. *See Department of Transportation v. P.U.C. and The Pittsburg & Shawmut Railroad Company,* 3 Pa. Commonwealth Ct. 405, 283 A.2d 313 (1971).

## IV

The Department finally disputes the imposition on the Commonwealth of all future maintenance on the ground that traffic studies introduced by it showed that users of the bridge originated or intended to end their journeys within Allegheny County. This, of course, is a factor which the Commission should have, and, indeed did, consider. The Commission further found upon sufficient evidence that the bridge carries traffic to and from major steel industries located in the greater Monongahela Valley area, and that State highway Route 736, which the bridge carries over a stream and railway tracks, is a principal highway route serving the southeastern

greater Pittsburgh area. The Department's count of more than 17,000 daily motor vehicle crossings provides support for these findings. Finally, the Commission's determination is consistent with the intention of the Legislature expressed in the Act of September 18, 1961, P.L. 1389, *as amended*, 36 P.S. §1758-101 et seq., and with the resolution of the Allegheny County Commissioners filed with the Department as a statutory prerequisite to the State's acquisition of the bridge, that maintenance would thereafter be assumed by the Commonwealth.

We find no abuse of the Commission's discretion or error of law. We therefore affirm its order dated March 5, 1974, and dismiss the Department's appeal.