Pennsylvania Public Utility Commission, Appellee, *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellant. The Pittsburg & Shawmut Railroad Co., Intervening Appellee.

Argued September 9, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Louis G. Cocheres,* Assistant Attorney General, with him *Herbert G. Zahn,* Assistant Attorney General, and *Robert W. Cunliffe,* Deputy Attorney General, for appellant.

*R. Knickerbocker Smith, Jr.,* Assistant Counsel, with him *Edward J. Morris,* Counsel, for appellee.

*Thomas D. Stauffer,* for intervening appellee.

OPINION BY JUDGE ROGERS, October 24, 1975:

This is an appeal from a final order of the Pennsylvania Public Utility Commission (Commission) allocating the costs of the repairs and restoration of a bridge structure carrying State Highway Route 66 over and above the tracks of The Pittsburg & Shawmut Railroad Co. in Mahoning Township, Armstrong County, and directing the Pennsylvania Department of Transportation

(Department) to perform maintenance on the crossing and its approaches in the future. The Commission directed the Department to reconstruct the bridge at the Department's estimated cost of about $230,000, and ordered each, the Pittsburg & Shawmut Railroad Co. and the County of Armstrong, to reimburse the Department in the amount of $12,000.

Since this is the third time this matter has been before us, only a brief history is needed. The Commission initiated an investigation of the Bridge in 1970. After hearings, it ordered the Department to make repairs necessary to make the bridge safe for a 12 ton limit, ordered the Railroad Company to pay 20% of the cost of the work, and further directed the Department at its initial cost to submit preliminary plans and estimate for a new bridge. The Department appealed and we affirmed the Commission's order in *Department of Transportation v. P.U.C. and The Pittsburgh & Shawmut Railroad Co.*, 3 Pa. Commonwealth Ct. 405, 283 A.2d 313 (1971). Further Commission hearings were conducted at which the Department produced four alternatives for improving the crossing: (1) a relocation of the bridge at an estimated cost of more than $1,000,000, (2) the replacement of the bridge at its existing location at an estimated cost in excess of $500,000, (3) the repair and widening of the existing arch at an estimated cost of $214,000, and (4) a proposal to make repairs to the existing structure estimated to cost about $169,000. The fourth proposal, that of providing repairs without change of the existing structure, provided for no increase of roadway width on the structure and would not result in a lifting for the future of the 12 ton posting limit. The Department recommended, and the Commission ordered, that the Department do the work called for in its third alternative which would increase the roadway width from 23 feet 3 inches to 27 feet 3 inches and permit the lifting of the 12 ton limit. The Department appealed

the Commission's order, however, disputing the allocation to the Commonwealth of about 90% of cost and the imposition on the Commonwealth of the duty of future maintenance. After argument we vacated the order and remanded the case to the Commission for specific findings. *P.U.C. v. Commonwealth of Pennsylvania Department of Transportation,* 18 Pa. Commonwealth Ct. 165, 335 A.2d 541 (1975). The Commission thereafter made specific findings and reissued its order. The Department has again appealed.

Although the Department's brief divides its argument into five asserted questions, its brief presents only two real issues; the first is the Department's assertion that Section 411(a) of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1181(a) is unconstitutional, and the second is the Department's contention that the record does not support the Commission's allocation to the Commonwealth of 90% of the cost of the improvement and the imposition upon the Commonwealth of the obligation of future maintenance.

The Department's constitutional argument is the same as it made in *Commonwealth v. P.U.C. and County of Allegheny,* 21 Pa. Commonwealth Ct. 407, 346 A.2d 371 (1975). It is rejected for the reasons given in our opinion there, which we need not repeat.

The Department's arguments based on the record require us to state the facts briefly. The bridge in question carries Legislative Route 66 (traffic routes 28 and 66) over the tracks of The Pittsburg & Shawmut Railroad Co. The bridge is a reinforced concrete structure built by the Railroad Company in 1922 in compliance with an order of the then Public Service Commission. The same order directed the Railroad Company to perform future maintenance. Three thousand motor vehicles, including trucks, now cross the bridge daily and only six trains a day cross under it on the Railroad Company's single track. The bridge structure is channeled for one lane

traffic and posted for a load limit not exceeding five tons. The bridge has been in constant service since its construction in 1922.

The Department states that the Commission's direction that the Commonwealth bear approximately 90% of the total cost improvidently imposes the cost of repairs resulting from the Railroad Company's failure to perform its obligation to maintain the bridge during the 50 years of its existence. The Department's engineering witnesses testified that the items of work suggested to be done by its fourth alternative for improving the bridge, estimated to cost $169,000, were maintenance work which should have been performed by the Railroad Company and that hence, their estimated cost is for deferred maintenance which should have been imposed on the Railroad Company. The Railroad Company's engineer, however, testified in some detail as to the maintenance which had been performed by the Railroad Company during years for which it still had records, and that the deterioration of the bridge was due simply to age, ordinary wear and tear and the admitted use by the Department of salt after 1951. The Commission found:

"The structural conditions and the extent of the present deterioration of the bridge, has not resulted from any serious neglect of maintenance, but is chiefly due to deterioration which can be anticipated on any 50-year old concrete structure which has been in constant service since the date of its construction in 1922. In addition, as noted by the carrier, the structure has been subjected to continual overloading by vehicular traffic which has obviously contributed to its deteriorated state."

The scope of our review is narrow:

"The Public Utility Law, infra, Article XI, Section 1107, as amended, 66 P.S. 1437, provides that we may not 'vacate or set aside the Commission's order, either in whole, or in part, except for error of law

or lack of evidence to support the finding, determination, or order of the Commission, or violation of constitutional rights.' We may not exercise our independent judgment on the record. Clemmer v. Pennsylvania Public Utility Commission, 207 Pa. Super. 388, 217 A.2d 800 (1966). If there is substantial evidence in support of the order of the Commission, we may not set it aside. Modern Transfer Company v. Pennsylvania Public Utility Commission, 182 Pa. Super. 110, 125 A.2d 463 (1956). Substantial evidence is such relevant evidence as a reasonable mind can accept as adequate to support a conclusion. Pittsburgh Railways Company v. Pennsylvania Public Utility Commission, 198 Pa. Super. 415, 182 A.2d 80 (1962)." *Erie Lackawanna Railway Company v. Pennsylvania Public Utility Commission*, 2 Pa. Commonwealth Ct. 396, 399, 278 A.2d 188, 190 (1971).

There being substantial evidence to support the Commission's finding, we may not disturb it. Since the finding, in turn, supports the allocation of most of the cost of renovation upon the Commonwealth, the Commission's order of allocation was not erroneous.

The Department's attack on the Board's imposition upon the Commonwealth of future maintenance centers on findings of the Commission which it says are not supported by the evidence. We are afraid that the Department is again engaging in disingenuous argument. See *Commonwealth v. P.U.C. and County of Allegheny*, 21 Pa. Commonwealth Ct. 407, 346 A.2d 371 (1975). At a hearing conducted on August 2, 1972, the Department placed in the record a document prepared by it entitled "Design Location Study." Many of the findings complained of are contained in this document, including:

"The alternates will provide a safer and more efficient roadway for the road user. The relocation will have the greatest beneficial effect for this factor.

"L.R. 66 (T.R. 28 and 66) provides a direct route to the interstate highway (I-80) to the north and the Allegheny Valley Expressway to the south. The improvement of this project will provide a more efficient feeder route to the listed defense highways.

. . . .

"This project will protect and assure fire protection to the local area. Without a safe structure across the Pittsburg and Shawmut Railroad fire protection will be seriously affected to the south of the structure. This area is presently serviced by the Distant, Pennsylvania Fire Company.

. . . .

"The public health and safety will be protected by providing a safe, efficient structure across the Pittsburg and Shawmut Railroad. Access, north and south, will be assured for a design time of many years.

"After construction, there will be no problems with school bus operations. "

The same document contains the following paragraph which the Department apparently wishes now to abjure.

"Due to the short length of the project, operating costs will not change to any appreciable extent. Maintenance costs of the new facility will be lower for many years due to the improvement and will be borne by the Pennsylvania Department of Transportation (PennDOT)."

We find no abuse of the Commission's discretion or error of law. We therefore affirm its order adopted May 22, 1975 and dismiss the Department's appeal.