The Pittsburgh & Lake Erie Railroad Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

County of Fayette, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Commonwealth of Pennsylvania, Department of Transportation et al., Intervenors.

610

Argued September 14, 1981, before President Judge CRUMLISH and Judges BLATT and MACPHAIL, sitting as a panel of three.

*Richard A. Porach,* for petitioner, The Pittsburgh & Lake Erie Railroad Company.

*Philip T. Warman,* for petitioner, County of Fayette.

*John J. Gallagher,* Assistant Counsel, with him *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*George D. Wenick,* Associate Counsel, with him *Jordan S. Weltman, Eckert, Seamans, Cherin and Mellott,* for intervenors.

OPINION BY JUDGE BLATT, May 26, 1982:

The Pittsburgh & Lake Erie Railroad Company (P&LE) and the County of Fayette (Fayette) have separately appealed a Public Utility Commission (PUC) final order imposing certain bridge rehabilitation costs upon them. We affirm[1] the PUC order in each case.

Layton Bridge, in Perry Township, Fayette County, carries State Highway Route 26191 over P&LE's single track right-of-way and the Youghiogheny River, and the Pennsylvania Department of Transportation (DOT) has maintained the bridge under legislative mandate[2] and a 1969 PUC order. Because of the deterioration of the bridge's wooden deck, the PUC

---

[1] Although these cases were not formally consolidated, the factual context and the legal arguments are substantially the same and we will therefore deal with them in a single opinion.

[2] Section 701 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. §670-701, requires the Commonwealth to repair and maintain any bridge on a state highway route carrying vehicular traffic over a stream and public service facility. The PUC, however, has exclusive jurisdiction in highway-rail crossing

directed an immediate weight limit reduction and instituted a further investigation. It then ordered DOT to prepare plans and cost estimates for the construction of a new wooden deck, at an estimated project cost of $489,934,[3] of which $26,322 was attributable to the rehabilitation of that part of the bridge which spanned the railroad tracks. The PUC directed DOT initially to perform all rehabilitative work and it also ordered P&LE, upon completion, to reimburse DOT for 50% of the actual cost attributable to the rehabilitation of the railroad span. The PUC order likewise directed Fayette to reimburse DOT for 10% of the total cost of repairing the bridge.

In its appeal, P&LE argues that a 1969 order of the PUC which gave DOT responsibility for maintaining the bridge cannot now be altered to allocate a portion of the rehabilitative costs to another party without a showing of a change in conditions or circumstances.

Our review must be limited, of course, to determining whether or not constitutional rights have been violated, an error of law has been committed, or the Commission's findings and order are supported by substantial evidence. *Fairview Water Co. v. Pennsylvania Public Utility Commission,* 55 Pa. Commonwealth Ct. 96, 422 A.2d 1209 (1980).

---

cases, *Bridgewater Borough v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 84, 124 A.2d 165 (1956), and in the event of a conflict between the State Highway Law and the Public Utility Law, the latter must prevail. *Department of Transportation v. Public Utility Commission,* 21 Pa. Commonwealth Ct. 407, 346 A.2d 371 (1975) (interpreting Section 411(a) of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended,* formerly 66 P.S. §1181(a), repealed by the Act of July 1, 1978, P.L. 598. A similar provision is now found in 66 Pa. C. S. §2704(a)).

[3] This includes excavation, structural backfill, replacement timbers, surface treatment, structural steel, structure removal and painting costs.

Section 2702(b) of the Public Utility Code (Code), 66 Pa. C. S. §2702(b), vests the Commission with the exclusive power to determine and prescribe, by regulation or order, the manner in which highway-rail crossings may be constructed, altered, relocated, suspended or abolished, and the manner and conditions in or under which such crossings shall be maintained, operated and protected to effectuate the prevention of accidents and the promotion of public safety. Section 2702(c) of the Code, 66 Pa. C. S. §2702(c), empowers the Commission to order any public utility or municipal corporation concerned or the Commonwealth to perform this work, and under Section 2704 (a), 66 Pa. C. S. §2704(a), the PUC may allocate costs among these parties.

In addition, the PUC has the authority under Section 703(g), 66 Pa. C. S. §703(g), "at any time, after notice and after opportunity to be heard . . . [to] rescind or amend any order made by it." The statute does not require that new evidence be presented before the PUC may rescind or amend a prior order. *Tranter v. Public Utility Commission,* 4 Pa. Commonwealth Ct. 585, 288 A.2d 837 (1972).[4] P&LE mistakenly relies here on *Scott Township v. Pennsylvania Public Utility Commission,* 188 Pa. Superior Ct. 174, 146 A.2d 617 (1958), because the court there clearly did not mandate that evidence of changed conditions is necessary to justify a reallocation of maintenance responsibility. Further, P&LE's claim contradicts the unambiguous wording of Section 703(g) which requires only notice and an opportunity to be heard, which were both clearly provided here.

------

[4] Interpreting Section 1007 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, *as amended,* formerly 66 P.S. §1397, repealed by the Act of July 1, 1978, P.L. 598. A similar provision is now found in 66 Pa. C. S. §703(g).

In its appeal, Fayette contends that it should not bear a percentage of the cost of the *entire* bridge repair plan because only a single span traverses P&LE's track.[5] The PUC counters that it has exclusive jurisdiction over highway-rail crossings, *supra* note 2, *as well as the approaches* to those crossings, *Springettsbury v. Public Utility Commission*, 5 Pa. Commonwealth Ct. 102, 289 A.2d 762 (1972), that in this case the portion of the bridge not actually traversing P&LE's tracks is a crossing approach and that it is therefore properly within the PUC's jurisdiction.

The factual issue of the extent of an approach must turn on the particular circumstances of each case and a mere linear analysis is not controlling, *Springettsbury*, because the portions of a structure carrying traffic over a river cannot be separated from the portion carrying traffic over railroad tracks. *Conshohocken Borough v. Pennsylvania Public Utility Commission*, 135 Pa. Superior Ct. 295, 5 A.2d 590 (1939). We conclude, therefore, that the PUC can order the entire structure's repair and allocate costs accordingly, and we also conclude that the order requiring Fayette's 10% contribution is reasonable.

Moreover, we are not persuaded by the petitioners' argument that the provisions of Section 2702(b) of the Code, 66 Pa. C. S. §2702(b), require the PUC to allocate only those costs of maintenance directly related to an immediate danger to the safety and welfare of the public and that, because the painting of the bridge is not related to public safety, the cost thereof may not be allocated.[6]

---

[5] This single span constitutes approximately 7.5% of the bridge's total length.

[6] The record reveals that of the $26,322 estimated to be attributable to the rehabilitation of the portion of the bridge spanning the railroad, $8,000 was allocated for painting and that of the total cost of repairing the bridge, $150,000 was attributable to painting.

The PUC's authority to allocate costs is provided in Section 2704(a) of the Code, 66 Pa. C. S. §2704(a), which states that "the cost of construction, relocation, alteration, protection, or abolition of such crossing ... shall be borne and paid ... by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine. ..." This section clearly does not require the PUC to establish that its apportionment of costs was related to the safety and welfare of the public.[7]

We must conclude, therefore, that, absent a showing that the PUC has otherwise abused its discretion, its assignment of costs in this case was proper.

### ORDER

AND Now, this 26th day of May, 1982, the Pennsylvania Public Utility Commission's order, I-77110287 adopted August 21, 1980 and entered September 24, 1980, is hereby affirmed.

Judge MENCER did not participate in the decision in this case.

Judge PALLADINO did not participate in the decision in this case.

CONCURRING AND DISSENTING OPINION BY PRESIDENT JUDGE CRUMLISH, JR.

I concur that the Public Utility Code does not require the Commission to consider evidence of changed

---

[7] The PUC, in apportioning these costs, is not limited to any fixed rule, *Department of Transportation*, and the law does not require the total expense to be prorated among the respective parties on a fixed percentage basis. *Allegheny County Port Authority v. Pennsylvania Public Utility Commission*, 207 Pa. Superior Ct. 299, 217 A.2d 810 (1966). The only requirement is that the order be just and reasonable. *Id.*

conditions before rescinding or amending a prior order. I also agree that it is authorized to order the *entire* structure's repair and to allocate costs accordingly. I am convinced, however, that the Commission erred by ordering the Pittsburgh and Lake Erie Railroad and Fayette County to contribute to the structure's painting costs.

The Public Utility Commission, a statutory creature, has only those powers clearly conferred upon it by the Legislature. *See Allegheny County Port Authority v. PUC*, 427 Pa. 562, 567, 237 A.2d 602, 605 (1967). There is no explicit statutory wording delineated, nor the strong and necessary implication therefrom, which would permit the PUC to allocate painting costs in this case. Code Section 2702(b)[1] provides, in part, that:

> The Commission is hereby vested with exclusive power to . . . determine and prescribe by . . . order . . . the manner in which such crossings may be constructed, altered, relocated, suspended or abolished, and *the manner and conditions in or under which such crossings shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public.* (Emphasis added.)

The Commission's power to regulate maintenance is clearly qualified and explicitly limited to effectuating the prevention of accidents and the promotion of public safety. Since Section 2704(a) of the Code[2] does not authorize the PUC to allocate *maintenance* costs, any regulation of maintenance responsibility is

---

[1] 66 Pa. C. S. §2702(b).

[2] 66 Pa. C. S. §2704(a) empowers the PUC to allocate the cost of railroad crossing "construction, relocation, alteration, protection, or abolition" among the public utilities, concerned municipalities and the Commonwealth.

subject to the limitations of Section 2702(b).[3] The Pennsylvania Department of Transportation concedes that the painting of the Layton Bridge is a *maintenance* item.[4] It follows then that the Commission cannot allocate this expenditure unless it determines that the cost is related to public safety and accident prevention.

It is my understanding that the payment of maintenance costs is clearly a *condition* which, under Section 2702(b), must be related to public safety promotion and accident prevention. Thus, I would reverse that part of the PUC's order which requires the Railroad and the County to contribute to the painting expenditure because the record is completely devoid of a PUC determination that the painting is necessary "to effectuate the prevention of accidents and the promotion of the safety of the public."[5] The painting costs should be borne exclusively by the Commonwealth as provided by Section 701 of the State High-

---

[3] The confusing interplay between Sections 2702(b) and 2704(a) demonstrates that the PUC's authority in this matter is not clearly established. Since the Commission's power must be construed strictly with reference to the enabling legislation, *see Allegheny County Port Authority v. PUC*, the courts should not extend the PUC's domain where the statutory basis for such authority is not sufficiently explicit.

[4] Milton H. Davis, PennDOT's Assistant Grade Engineer, testified that the bridge plan's painting item, which constitutes $150,000.00 of the $489,934.00 estimate, is not related to the rehabilitation of the structure's weight-bearing capacity.

[5] This does not mean that the PUC is prohibited from allocating the painting or other general maintenance costs of bridge rehabilitation projects within this jurisdiction. If the PUC relates the maintenance expenditure to safety promotion and accident prevention, the order, in my opinion, would be legally sound. Since, however, the PUC has only those powers explicitly conferred upon it by statute, I am constrained to conclude that the order in this case, as it relates to the allocation of painting costs, is without statutory authority.

way Law,[6] which requires the Commonwealth to maintain bridges on State highways, with certain exceptions not here applicable.

[6] The Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §670-701.