City of Philadelphia, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued May 9, 1985, before Judges MACPHAIL, BARRY and PALLADINO, sitting as a panel of three.

*Ralph J. Luongo,* with him, *Michael B. Tolcott, Barbara W. Mather,* City Solicitor, *Barbara R. Axelrod,* Divisional Deputy City Solicitor, and *Norman G. Prajzner,* Assistant City Solicitor, for petitioner.

*John J. Gallagher,* Assistant Counsel, with him, *John B. Wilson,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

*Herbert Zohn,* for intervenor, Department of Transportation.

OPINION BY JUDGE MACPHAIL, August 14, 1985:

The City of Philadelphia (City) appeals here from a decision of the Pennsylvania Public Utility Commission (PUC) ordering, *inter alia,* that upon completion of improvements to the Wissahickon Avenue-Queen Lane bridge the City must at its own expense furnish material and do all work necessary to maintain the curbs, sidewalks and parapets of the bridge and the Queen Lane approaches to the bridge. The PUC also refused to order reimbursement to the City for expenses incurred in emergency repairs to the existing bridge from 1975 through May of 1983. By the same order the PUC allocated the costs of the proposed improvements, including relocation of various

public utility facilities, among the parties to the proceedings[1] and the public utilities to be affected by the construction.[2]

The PUC authority in regard to construction and maintenance of railroad crossings and allocation of costs for same is found in Sections 2702 and 2704 of the Public Utility Code (Code) 66 Pa. C. S. §§2702 and 2704. Our review of the PUC order in question is pursuant to Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, which limits this Court to a consideration of whether the adjudication is in accordance with the law, whether the City's constitutional rights have been violated, whether the proper administrative procedures have been followed and whether all necessary findings of fact made by the PUC are supported by substantial record evidence. The City argues that the opinion and order of the PUC are erroneous, arbitrary, against the weight of the evidence, and an abuse of discretion and violative of existing law. For the reasons stated below, we do not agree.

The City points to various sections of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended,* 36 P.S. §§670-101—670-1102 and the State Highway Act of 1961, Act of September 18, 1961, P.L. 1389, *as amended,* 36 P.S. §§1758-101—1758-502, as being in conflict with the PUC's order that the City maintain the curbs, sidewalks and parapets of the

---

[1] The various parties include the Department of Transportation (DOT), the Southeastern Pennsylvania Transportation Authority, the Consolidated Rail Corporation, the Trustees of the Penn Central Transportation Company and the City.

[2] The public utilities to be affected by the construction include Philadelphia Electric Company, Bell Telephone of Pennsylvania and Philadelphia Gas Works. A 12-inch City water main attached to the bridge will be abandoned by the City and the City will bear no costs associated with removal of the water main.

bridge. This contention overlooks the fact that this Court has stated that "in case of conflict between the State Highway Law and Section 411(a) of the Public Utility Law[3] the latter, giving the Commission exclusive jurisdiction over highway-rail crossing proceedings, must prevail." *Department of Transportation v. Pennsylvania Public Utility Commission*, 21 Pa. Commonwealth Ct. 407, 412-13, 346 A.2d 371, 375 (1975) (footnote omitted).[4] Section 411(a) of the Public Utility Law and Section 2704(a) of the Code, 66 Pa. C. S. §2704(a) are substantially identical. The PUC continues to have exclusive jurisdiction over highway-rail crossing proceedings. We must, therefore, determine whether the PUC acted within its statutory authority in regard to the City in the instant order.

Section 2702(b) of the Code, 66 Pa. C. S. §2702(b), provides in pertinent part that the PUC "is hereby vested with exclusive power . . . to determine and prescribe, by regulation or order, . . . the manner and conditions in or under which such [highway-rail] crossings shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public." Section 2704(a) of the Code provides in pertinent part that

the cost of construction, relocation, alteration, protection, or abolition of such crossing, . . .

---

[3] Act of May 28, 1937, P.L. 1053, *as amended*, 66 P.S. §1181(a), repealed and re-enacted by the Act of July 1, 1978, P.L. 598. This provision is now found at Section 2704 of the Public Utility Code (Code), 66 Pa. C. S. §2704.

[4] We note that this Court affirmed a PUC order in *Department of Transportation v. Pennsylvania Public Utility Commission* allocating future maintenance of a bridge to DOT. That decision simply found that the PUC could reasonably make such an allocation, not that DOT must in all cases bear the cost of future bridge maintenance.

shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the Commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

This Court has previously held that the PUC is empowered to impose and apportion the costs of maintenance of a highway-rail crossing bridge, *Consolidated Rail Corp. v. Pennsylvania Public Utility Commission*, 55 Pa. Commonwealth Ct. 576, 423 A.2d 1108 (1980), and that the only requirement which the PUC must meet in apportioning such costs is that the apportionment be just and reasonable. *Id.*

The PUC concluded in the instant case that the proposed construction of the bridge and highway approaches "is necessary for the proper service, accommodation, convenience or safety of the traveling public." Conclusion of Law 3. This conclusion is amply supported by the record.

We have reviewed the entire record and we find that it is just and reasonable to apportion the costs of maintenance of the curbs, sidewalks and parapets of the bridge to the City. The uncontested evidence shows that the bridge is heavily traveled by vehicular traffic the majority of which is intracity. Queen Lane is a City street, although Wissahickon Avenue is a part of the State highway system. The proposed construction will restore the bridge to a higher weight limit than the three ton limit required while the bridge remains in a state of disrepair. The PUC could reasonably conclude from the record that the benefits to the City are such that the City should reasonably be required to share in the future maintenance of the bridge.

Concerning the City's expenditures for emergency repairs of the bridge,[5] we hold that the PUC properly denied reimbursement to the City for those expenditures. As stated above, the PUC has the authority to allocate costs in regard to highway-rail crossings. The PUC did not allocate to the City any of the costs of the proposed construction other than those associated with any required relocation of the facilities of any municipal public utility. In light of the benefits to the City of the use of the bridge by the traveling public during the years when the City performed emergency repairs and the comparatively small sum expended by the City for those repairs, the PUC acted justly and reasonably.

Finding no merit to the City's contentions we affirm the order of the PUC.

## ORDER

The order of the Pennsylvania Public Utility Commission dated April 24, 1984, No. I.D. 256, is hereby affirmed.

---

[5] The PUC found that the City expended $3,087.38 for emergency repairs. Finding of Fact 18. This was supported by the record.

---

CONCURRING OPINION BY JUDGE BARRY:

I agree that the excellent opinion of Judge Mac-Phail states the law as the courts have interpreted it. I must point out, for possible legislative consideration, my belief that the law is unfair. The PUC has the power to allocate the costs of highway-rail crossings, not on the basis of ownership of the facilities, but on its own judgment of benefits to any affected party. It would be difficult in most cases for a municipality in which the improvement takes place (in this

case the City of Philadelphia) to deny a benefit to its citizens. I believe the result is unfair to the citizens of that municipality who have not contracted for the improvement nor had any input into the means or policy involved.