**LP WATER AND SEWER COMPANY,**
Petitioner,

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1998.

Decided Oct. 21, 1998.

Publication Ordered Dec. 22, 1998.

Charles B. Zwally, Harrisburg, for petitioner.

Stanley E. Brown and John F. Povilaitis, Harrisburg, for respondent.

Christine Maloni Hoover, Harrisburg, for intervenor.

Before PELLEGRINI, J., FRIEDMAN, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The central issue before this Court is whether a water and sewage company that fails to receive tariff approval from the Public Utility Commission (PUC or Commission) is liable to refund customers for the amounts charged for collection.

LP Water and Sewer Company (LP) appeals from the order of the PUC that adopted the recommended decision of Administrative Law Judge Allison K. Turner (ALJ Turner), as modified, ordering LP to refund residential water and sewer customers charges from October 1989 through June 1991. We affirm.

The history of this case begins on October 18, 1988, when LP submitted two applications to the PUC seeking the right to provide water and waste water service. The PUC conditionally approved both applications, but required LP to file initial tariffs within ninety days.

Notwithstanding the specific directive to file initial tariffs within ninety days, LP did not file its initial tariffs until February 25, 1991, a date well over a year from the date ordered by the PUC. More importantly, however, LP began charging its customers without having received or even filed for PUC approval of its tariffs.

Soon thereafter, Richard Sanderman (Sanderman) filed a pro se complaint against LP, requesting a refund. (1991 Complaint.) Sanderman's complaint for refunds was consolidated with LP's two application dockets, and a complaint filed by the Falls Community Association, Inc. (FCA). Administrative Law Judge Louis Cocheres (ALJ Cocheres) heard argument and issued a recommended decision, which specifically dealt with the refund issue argued by the Office of the Trial

Staff (OTS), the Office of Consumer Advocate (OCA), FCA, Sanderman and LP.

ALJ Cocheres, in his opinion, recognized LP's violation in charging and collecting rates without an approved tariff. ALJ Cocheres held LP liable for all amounts collected from its water and waste water customers, i.e., $1,160,423.00 plus interest, from October 1989 through June 1991, the date which LP discontinued charging and collecting rates. However, ALJ Cocheres, exercising his discretion under Section 1312 of the Public Utility Code, 66 Pa.C.S. §1312, reduced LP's refund obligation to $598,535.00, reflecting the difference between the legally approved rate and the rate that LP had charged since October 1989. The refunds would be spread over a five-year period but no interest was charged.

The PUC reviewed this recommendation. By short-form opinion and order entered on January 27, 1992, (short-form order), the PUC ordered a hearing to show cause regarding the refund issue. The PUC stated that the contentions of the parties raised in exceptions and replies would not be addressed in detail, but would be thoroughly disposed of in a later-filed, long-form opinion.[1] The long-form opinion and order entered on July 7, 1993, stated that:

> The Order to Show Cause proceeding should address several of the issues raised by the ALJ, namely ... whether ratepayers are entitled to refunds due to the Company's failure to file an initial tariff and to increase its rates without Commission approval.
> 161a.

Soon thereafter, the PUC initiated the show cause proceeding, ordering LP to address, inter alia, whether ratepayers are entitled to refund because of: 1) LP's failure to file an initial tariff; and 2) LP's illegal increase in its rates without prior PUC approval.

The show cause proceeding was assigned to Administrative Law Judge George M. Kashi (ALJ Kashi). On January 25, 1994, a joint petition for settlement was submitted to ALJ Kashi on behalf of LP, OTS and the OCA. Sanderman was not a signatory to this settlement and filed exceptions to ALJ Kashi's recommended approval of the settlement.[2] Notwithstanding, the PUC rejected the settlement, noting that there had been no hearings on the refund issue and remanded the entire matter to ALJ Kashi for hearings.

In the meantime, the PUC adopted an administrative policy in compliance with *Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992), which eliminated the potential for commission-level involvement in the initiation of prosecutions and investigations. Thus, on February 28, 1995, the PUC withdrew its order to show cause and closed the docket based on its interpretation of *Lyness*.[3]

On June 23, 1995, Sanderman filed the complaint, which is at issue in this appeal, against LP, again requesting that the PUC order refunds of the amounts collected by LP. (1995 Complaint.)[4] On February 2, 1996, ALJ Turner ordered that the issues regarding the sewer rates raised in the 1995 Complaint be severed and dealt with in the on-going sewer base rate case, filed by LP on December 15, 1995. (1995 sewer base rate case.) Notwithstanding this order, the refund issue raised by Sanderman in the 1995 Complaint was not addressed in the 1995 sewer base rate case.

---

1. However, the parties sought clarification with regard to the PUC's intent with regard to the refund issue. The OCA filed a petition for clarification, which the PUC answered stating that the issue of refunds is a matter which should be addressed in the order to show cause proceeding.

2. The settlement was less than the refund calculated by either Sanderman or ALJ Cocheres.

3. In withdrawing its order to show cause, the PUC never stated that its initial actions in commencing the show cause proceeding were illegal or that it was without authority to commence

such action. The PUC, in fact, was apparently reluctant to apply its new administrative policy to on-going cases. However, we will not interpret this apparent reluctance to support the conclusion that the show cause proceeding was initially unlawful, as LP suggests.

4. Sanderman later withdrew without prejudice all issues raised in his 1995 Complaint, except the issue of the refunds identified and recommended by ALJ Cocheres in his 1991 recommended decision.

On May 17, 1996, LP filed a motion to dismiss Sanderman's 1995 Complaint on the basis of res judicata and claim preclusion. ALJ Turner denied LP's motion based upon her conclusion that the refund issues had not been finally adjudicated by the PUC. Further, ALJ Turner, recognizing that she had severed the sewer rate issue for consideration in the 1995 sewer base rate case, but which had not been considered, stated that:

> In conclusion, Sanderman was not a party and did not have automatic standing to appeal the Commission's February 28 order. Thus, he is not a party for purposes of collateral estoppel. In addition, neither the July 7, 1993 order nor the February 28, 1995 order should be considered as final appealable orders as to the refunds. The refund issues were never fully litigated before nor decided by the Commission at either of these dockets. Nor were the refund issues included in and litigated, or decided in any other proceedings.

928a.

LP further challenged ALJ Turner's denial of its motion to dismiss on the basis of res judicata and claim preclusion. The PUC, however, agreed with ALJ Turner, stating:

> Inasmuch as the proceeding in which we intended the issue of refunds to be addressed was terminated without an adjudication on the merits of the issue, we find that it is irrelevant whether Mr. Sanderman was or was not a party to a prior proceeding. In our opinion, LP's petition comes perilously close to being a colossal waste of administrative resources.

457a.

Following several hearings on the merits, ALJ Turner concluded that LP remained liable for $598,535.00 in refunds to its residential water and wastewater customers,

without interest. ALJ Turner also found that Sanderman had established a prima facie case for the illegal collection of water and wastewater from LP's residential customers and that the burden of persuasion, shifted to LP to establish the elements for its defense. To this end, ALJ Turner concluded that LP had failed to provide sufficient evidence to support its contention that the company could not afford a refund to ratepayers. Finally, the ALJ concluded that the four-year statute of limitations found in Section 1312 of the Code had been tolled during the ongoing litigation of the refund issue and, that the refund issue had yet to be finally decided by the PUC. 745a.

Both the OCA and LP filed exceptions to ALJ Turner's recommended decision. The OCA excepted to the recommendation to deny interest on the refunds. LP raised procedural arguments concerning the statute of limitations, res judicata and claim preclusion and a denial of due process because ALJ Turner reviewed ALJ Cocheres' 1991 decision, without advance notice or an opportunity to be heard. However, the PUC adopted in pertinent part ALJ Turner's recommended decision.

■  Presently, before this court is LP's petition for review. LP's petition asserts that: 1) the PUC erred in failing to reject Sanderman's complaint on the basis of the statute of limitation set forth in Section 3314 of the Code, 66 Pa.C.S. §3314; 2) the PUC erred in failing to dismiss Sanderman's complaint on the basis of res judicata and/or claim preclusion; and 3) the PUC denied LP due process by considering evidence from the earlier proceedings.[5]

First, LP argues that the PUC improperly rejected its claim that the statute of limitations barred Sanderman's complaint.[6] In its

---

**5.** Our scope of review of PUC cases is limited to a determination of whether constitutional rights have been violated, errors of law committed or the PUC's findings and conclusions are supported by substantial evidence. 2 Pa.C.S. §704; *Leung v. Pennsylvania Public Utility Commission,* 136 Pa.Cmwlth. 194, 582 A.2d 719 (Pa.Cmwlth. 1990). Regarding the substantial evidence test, this Court's duty is to determine only whether or not the PUC's findings are supported by substantial record evidence. We will not substitute our

judgment for that of the PUC nor will we indulge in the process of weighing evidence and resolving conflicting testimony. *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission,* 61 Pa.Cmwlth. 325, 433 A.2d 620 (Pa.Cmwlth. 1981).

**6.** In its brief, LP does not address its contentions, contained in the original petition for review, that the PUC erred in finding an agency relationship between two separate corporations and in order-

order rejecting LP's argument that Sanderman's complaint was barred by the statute of limitations, the PUC provided the following discussion:

In reference to the statute of limitations, as a bar to this proceeding, the refund issue has been through on-going litigation since March 26, 1991. The Respondent [LP] charged for the water and sewer service in October, 1989. Thus, less than two years had lapsed before the complaint was brought before this Commission, well within the statutory deadline of four years. 66 Pa.C.S. §1312. Moreover, it is ungenuine to state that the Complainant [Sanderman] cannot add to the case the tolling of the statute of limitations through the Show Cause proceeding and further state that the Complainant was not part of that proceeding. The fact is that the ALJ of the Show Cause proceeding [ALJ Kashi] acknowledged the *pro se* appearance of the Complainant. Additionally, precedent supports the principal that the statute of limitation may be tolled during a period of ongoing litigation. *PG & W*, 56 Pa. PUC 433, 49 PUR 4 th 356 (1982).

1997 PUC Order at 12.

■ LP argues that the PUC committed legal error in failing to find that Sanderman's complaint was barred by the three-year statute of limitations set forth in Section 3314 of the Code, 66 Pa.C.S. §3314 and instead applying the four-year statute of limitation of Section 1312 of the Code. We do not agree.

LP's reference to Section 3314 of the Code is misplaced. Section 1312, not Section 3314, specifically addresses the statute of limitations in a refund proceeding. Section 1312(a) states, in pertinent part:

If, in any proceeding involving rates, the Commission shall determine that any rate received by a public utility was unjust or unreasonable, or was in violation of any regulation or order of the Commission, or was in excess of the applicable rate contained in an existing and effective tariff of such public utility, the Commission shall have the power and the authority to make

an order requiring the public utility to refund the amount of any excess paid by any patron, in consequence of such unlawful collection, within *four years prior to the date of the filing of the complaint, together with interest at the legal rate from the date of such excessive payment* ....

66 Pa.C.S. §1312(a). LP's assertion that Section 3314(a) of the Code is applicable is rejected because Section 3314(a) states, in pertinent part, that "no action for recovery of any *penalties* or *forfeitures* ... shall be maintained unless brought within three years from the date in which the liability therefore arose...." (Emphasis added.) This is not a case for penalties or forfeitures but concerns a refund.

■ LP also argues that the litigation of Sanderman's 1995 Complaint was not tolled by the Show Cause proceeding because Sanderman did not institute that proceeding. However, Sanderman was very active in the Show Cause proceeding and was treated as an active party, specifically mentioned by ALJ Kashi. 832a. Further, Sanderman filed exceptions to ALJ Kashi's recommended approval of the joint petition for settlement. This demonstrates continuous involvement since his first attempt in March 1991 to recover a refund. LP's assertion that Sanderman could have appealed the PUC's short-form order and the PUC's 1995 order rescinding the Show Cause proceeding is also without merit. As to the short-form order, the PUC in denying OCA's petition for reconsideration, stated that it was clear that the issue of refunds was a matter to be addressed in the Show Cause proceedings. With regard to the PUC's decision to rescind its Show Cause proceeding, Sanderman almost immediately filed his complaint in this case in order to continue to press the refund issue. LP's contention that Sanderman should have appealed the Show Cause decision ignores the reality of the history of this case. Therefore, we hold that the PUC correctly adopted ALJ Turner's holding that Sanderman's 1995 Complaint was not time barred by the statute of limitations.

ing refunds given LP's financial situation. LP's failure to address these issues in its statement of questions and argument section of its brief results in waiver of those issues on appeal. Pa. R.A.P. 2116(a).

Next, LP asserts Mr. Sanderman's complaint was barred under the legal principal of res judicata and claim preclusion. LP claims that on at least five occasions, the PUC issued final orders, dismissing or terminating complaints requesting refunds. (LP's brief at 29). However, both ALJ Turner and the PUC rejected LP's argument of res judicata and claim preclusion. As the PUC stated, the issue of res judicata and claim preclusion must be rejected.

The termination of the Show Cause proceeding because of the implications of the *Lyness* decision, *supra*, was an administrative action on a procedural issue and was not determinative of the substantive issue of refunds to residential customers of the proceeding. The issue of refunds has yet to be finally decided by this Commission. Claim preclusion cannot be applicable given that the issue of refunds has not been fully adjudicated before the Commission.

PUC 1997 Order at 12.

■ Res judicata refers to "technical" or "strict res judicata," frequently called claim preclusion. *Commonwealth ex. rel. Bloomsburg State College v. Porter*, 148 Pa. Cmwlth. 188, 610 A.2d 516 (Pa.Cmwlth.1992). The requirements for the application of res judicata or claim preclusion require: 1) identity of things sued for; 2) identity of the cause of action; 3) identity of persons and parties to the actions; and 4) identity of the quality or capacity in the persons for or against whom the claim is made. *GPU Industial Intervenors v. Pennsylvania Public Utility Commission*, 156 Pa.Cmwlth. 626, 628 A.2d 1187 (Pa.Cmwlth.1993). The PUC specifically found that the refund issue was never fully adjudicated. Because issues must have been fully and actually litigated and determined by valid and final judgment before res judicata applies, *County of Berks, ex. rel. Mark C. Baldwin, District Attorney v. Pennsylvania Labor Relations Board*, 544 Pa. 541, 678 A.2d 355 (1996), we hold that because the issue of refunds had never been fully litigated, res judicata does not apply here.

■ Next, LP contends that the PUC lacked sufficient evidence to make its determination. LP asserts that this is based upon the fact that: 1) Sanderman failed to meet his burden of proof; 2) ALJ Turner improperly included certain evidence; 3) the PUC lacked authority to order refunds for all customers; and 4) various other procedural errors. However, our review of the record demonstrates that substantial evidence [7] does support the findings made by the PUC. We will address these *in seriatim*.

■ LP asserts that Sanderman failed to meet his burden of proof in showing that a refund was appropriate. While not specifically delineating why Sanderman did not meet his burden, we look to the record and observe that LP did not take issue with the amounts of the proposed refund but merely asserted that they were unable to meet this financial obligation. The PUC recognized that this defensive claim shifted the burden to LP to demonstrate the adequacy of its financial position. However, LP did not introduce such evidence and the PUC determined that LP failed to meet its burden of proof on this defensive claim. *See* 1997 PUC Order at 13. Thus, we hold that by implication, Sanderman met his burden and it was LP that failed to step forward in its defense and provide adequate evidence to support its position.

Next, LP argues that the PUC erred because it did not base its decision on proper record evidence. LP objects to ALJ Turner's use of the records of prior proceedings as the foundation for her recommendation. LP asserts that ALJ Turner's citation from records developed in 1991 was a wanton disregard of the PUC's rules of practice. We do not agree.

■ ALJ Turner's recitation of the *facts*, in this case did not form the basis for her legal *conclusions* regarding the refund issue. LP was not denied due process by a recitation of historical facts, relevant to the record, because there was no change in the facts from the original record, except that

---

7. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pennsylvania Public*

*Utility Commission v. Department of Transportation*, 21 Pa.Cmwlth. 415, 346 A.2d 376 (Pa. Cmwlth.1975).

LP's revenues had increased greatly since 1991. LP cannot claim surprise or that it had no notice of the 1991 proceedings, as its own witnesses referred to evidence presented in prior proceedings before the PUC. Further, these factors acted as a basis for LP's argument that it had insufficient revenues from which to issue refunds. Therefore, ALJ Turner's recitation of the facts developed in the 1991 proceeding was not error.

Next, LP argues that Sanderman cannot represent all of its customers and that if refunds are ordered they should be restricted to Sanderman alone. However, Section 1312 of the Code provides that any order of the PUC awarding a refund shall be made for and on behalf of all patrons subject to the same rate of the public utility. Thus, Sanderman does not have to represent all customers because the PUC found that LP unlawfully charged rates to all of its customers.

█ LP also asserts that the PUC erred in permitting the ALJ to rule on refunds regarding both water and sewage companies. This argument is based upon the fact that ALJ Turner had originally severed the water and sewage issues in a previous order. However, again, on nearly every page of the record of this case, including the discussion by LP's own witness, both the sewer and water refunds were addressed. Therefore, LP was not improperly notified of the issues before the tribunal. Therefore, we hold that substantial evidence does support ALJ Turner's findings and the PUC properly adopted her recommended decision.

Accordingly, we affirm.

### ORDER

AND NOW, this 21 st day of October, 1998, the order of the Pennsylvania Public Utility Commission in the above-captioned matter is hereby affirmed.