County of Chester, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued September 11, 1979, before President Judge BOWMAN and Judges WILKINSON, JR., BLATT, DiSALLE, CRAIG and MACPHAIL. Judges CRUMLISH, JR.

and MENCER did not participate. Judge ROGERS disqualified himself.

*Norman J. Pine*, Assistant County Solicitor, with him *John S. Halsted*, County Solicitor, for petitioner.

*Richard S. Herskovitz*, with him *Harvey S. Miller*, Assistant Counsel, *John B. Wilson*, Assistant Counsel, and *George M. Kashi*, Chief Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, November 19, 1979:

The County of Chester (County) appeals to this Court from a decision of the Pennsylvania Public Utility Commission (PUC) ordering the reconstruction of a bridge/railroad overpass in the City of Coatesville (City), finding the County to be "interested" and "concerned" with the crossing, and further ordering the County to contribute 25 per cent of the total cost of material and labor used in reconstructing the bridge.[1] On appeal, the County alleges that the

---

[1] This case began in 1969 when the PUC instituted an investigation on its own motion into the use and safety of a bridge located in the City situated over and above the grade of electrified main tracks of the Penn Central Transportation Company (now National

PUC lacked the legal authority to determine that it was a "concerned" party and to allocate costs against it because the bridge's only connection with the County was its location[2] and that even if the PUC did have such authority, such allocation on the facts of this case constitutes an abuse of discretion. For the reasons which follow, we affirm the PUC's order.

Section 409 of the Public Utility Law (Law), Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1179 (c)[3] provided that:

> Upon its own motion or upon complaint, the *commission shall have exclusive power after*

Railroad Passenger Corporation or AMTRAK). Following the filing of the parties' answers to the PUC's interrogatories and following a hearing, the PUC ordered Penn Central to remove the bridge and barricade the structure. Penn Central did not comply with the order. In November, 1973, the City filed a petition and in January, 1974 an amended petition with the PUC alleging a change in circumstances since the PUC's demolition order and requesting that the record be reopened. After a hearing, the PUC denied the City's petition but reopened the record *sua sponte* and directed a further hearing to be held on the status of the crossing. After that hearing, the PUC determined that the bridge should be reconstructed and reopened and ordered the City to prepare plans for the reconstruction. The City did so and following a hearing on the plans the PUC entered the order from which this appeal has been taken.

2 Respondents PUC and City argue that the County failed to raise below the issue of whether or not it was a concerned party and, therefore, cannot raise it on appeal. An exhaustive review of the record indicates that nowhere did the County specifically argue that it was not a "concerned" party. The County did, however, repeatedly contest any responsibility for the work to be done on the bridge or for the cost of such work. Hearings of September 23, 1970, N.T. 60; September 19, 1974, N.T. 250-52; April 28, 1977, N.T. 147-48. We find the County's response on the issue of responsibility adequate to permit it to raise the concerned party issue on appeal.

3 The Public Utility Law of 1937 was in effect when the PUC issued the order on appeal here. It was repealed by Section 2 of the Act of July 1, 1978, P.L. 598. A provision similar to Section 409 of the Law may now be found in the Public Utility Code, 66 Pa. C.S. §2702(c).

*hearing,* upon notice to all parties in interest, including the owners of adjacent property, *to order any such crossing heretofore or hereafter constructed to be* relocated or *altered,* or to be abolished upon such reasonable terms and conditions as shall be prescribed by the commission. ... The commission may order the work of construction, relocation, alteration, protection, or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth. (Emphasis added.)

Section 411 of the Law, 66 P.S. §1181(a)[4] provided that:

[*T*]*he expense of such* construction, relocation, *alteration,* protection, or abolition *of any crossing, shall be borne and paid,* ... *by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may,* after due notice and hearing, *determine,* unless such proportions are mutually agreed upon and paid by the interested parties. (Emphasis added.)

Section 2 of the Law, 66 P.S. §1102(15) included "county" within its definition of "municipal corporation."[5]

The clear provisions of the Law, then, authorized the PUC to determine who was a "concerned" party and who should bear the costs of a bridge reconstruction. The only remaining issues are whether the PUC erred in determining that the County was a concerned party and in allocating a portion of the reconstruction costs to it.

---

[4] *See* note 3 *supra.* A provision similar to Section 411 may now be found in the Public Utility Code, 66 Pa. C.S. §2704(a).

[5] *See* note 3 *supra.* A provision similar to Section 2 of the Law may now be found in the Public Utility Code, 66 Pa. C.S. §102.

In a case such as this, we will not exercise our independent judgment on the record or weight conflicting evidence. Our only inquiry is directed to whether there is substantial evidence on the record to support the PUC's decision. Substantial evidence is competent and relevant evidence having a rational probative force. Findings of fact made by the PUC which are supported by substantial evidence are conclusive and may not be disturbed on appeal. *Pittsburgh Railways Co. v. Pennsylvania Public Utility Commission,* 198 Pa. Superior Ct. 415, 427, 182 A.2d 80, 85 (1962). *See also Department of Transportation v. P.U.C.,* 3 Pa. Commonwealth Ct. 405, 411, 283 A.2d 313, 317 (1971).

In determining whether a municipality is "concerned," we must look to whether the action ordered by the PUC, here the reconstruction of a bridge, will result in substantial local improvement or a distinct local benefit for the residents of the municipality. *See Somerset County v. Pennsylvania Public Utility Commission,* 132 Pa. Superior Ct. 585, 594, 1 A.2d 806, 810 (1938); *Schuylkill County v. Public Service Commission,* 77 Pa. Superior Ct. 504, 511 (1921); *Lancaster County v. Public Service Commission,* 77 Pa. Superior Ct. 495, 503 (1921).[6] There was uncontradicted testimony presented at the various hearings that a reconstructed bridge would provide a safer route for school children who currently walk over the bridge as it now stands or through dangerous railroad underpasses, better traffic control, better, safer fire and ambulance service not only to the City but also to outlying County areas which rely on the City's fire department, easier access to the County's second largest employer, a Vet-

---

[6] Sections 409 and 411 of the Law are reenactments of the earlier Public Service Company Law so decisions interpreting the law as it existed prior to 1937 continue to be applicable. *Pittsburgh and Shawmut Railroad Co. v. Pennsylvania Public Utility Commission,* 141 Pa. Superior Ct. 233, 235, 14 A.2d 903, 904 (1940).

eran's Hospital located north of the City, and easier and safer access to City businesses. Of course, any benefit from the reconstructed bridge to the City and its residents is, by definition and location, also a benefit to the County and its residents. In allocating part of the costs of reconstruction to the County, the PUC stated:

> However, because City of Coatesville and the County of Chester have benefited in the past from the existence of the bridge, and will additionally derive future benefit from reconstruction of the bridge structure, the remainder of the reconstruction costs shall be allocated to the city and the county.

The PUC's finding is supported by substantial evidence and its decision to allocate part of the reconstruction costs to the County was not error.

Order affirmed.

### ORDER

AND Now, this 19th day of November, 1979, the Order of the Pennsylvania Public Utility Commission at Complaint Docket No. 18838, dated June 21, 1978, is affirmed.