Airlines Transportation Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

H/Z Associates, t/a Howard Johnson Motor Lodge et al., Intervenors.

Airlines Transportation Company, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Jonathan B. Robison, and William Schlenke, Intervenors.

Argued May 6, 1981, before President Judge Crumlish, Jr. and Judges Blatt and Williams, Jr., sitting as a panel of three.

*Richard S. Dorfzaun,* with him *Eugene F. Scanlon, Jr., David B. Fawcett, Jr.,* and *Robert J. Marino, Dickie, McCamey & Chilcote,* for petitioner.

*Eric A. Rohrbaugh,* Assistant Counsel, with him *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*Robert Raphael,* with him *Bradley S. Gelder, Robert Raphael, P.C.,* for intervenor, Howard Johnson Motor Lodge.

*Jonathan B. Robison,* for intervenors, Jonathan B. Robison and William Schlenke.

Opinion by President Judge Crumlish, December 18, 1981:

Two Public Utility Commission orders directed Airlines to provide additional limousine service between the City of Pittsburgh and Greater Pittsburgh

International Airport. Airlines appeals, we affirm in part and reverse in part.

Airlines, a common carrier, is the sole provider of airport limousine service in Pittsburgh. Prior to this action, Airlines provided transportation to Hotel Webster Hall, located in the Oakland area of Pittsburgh. When Webster Hall was converted to apartments, Airlines substituted service to the Crossgates Inn, also located in Oakland.

Two actions were instituted against Airlines: the first by residents of the Bellefield area of Oakland, requesting that service be reinstated at Webster Hall, the second by Howard Johnson's, an Oakland hotel, alleging that Airlines' failure to provide service there constituted an unreasonable prejudice and disadvantage pursuant to Section 1502 of the Public Utility Code (Code), 66 Pa. C. S. §1502. The Commission ordered Airlines to resume service to Webster Hall and to provide additional service to Howard Johnson's.

Our scope of review is limited to a determination of whether the Commission violated constitutional rights, committed an error of law, or its findings were supported by substantial evidence, *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 57 Pa. Commonwealth Ct. 148, 422 A.2d 230 (1980), *aff'd en banc*, 57 Pa. Commonwealth Ct. 148, 426 A.2d 1312 (1981).

We will first consider the order extending service to Webster Hall. Section 1501 of the Code, 66 Pa. C. S. §1501, provides in part:

Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or prop-

er for the accommodation, convenience, and safety of its patrons, employees, and the public.

The Commission's inquiry into the adequacy of existing service and the need for extended service must center on the public need for such service. Those requesting the extension of service bear the burden of proof to show a substantial, though not necessarily imperative, present need for the service, *Ridley Township v. Pennsylvania Public Utility Commission,* 172 Pa. Superior Ct. 472, 94 A.2d 168 (1953). They must also show that the service extension is in the interest of the public as well as beneficial to an individual or class, *Pennsylvania Public Utility Commission v. Souderton Borough,* 210 Pa. Superior Ct. 22, 231 A.2d 875 (1967).

We conclude that the Commission's order restoring service to Webster Hall is supported by substantial evidence. Evidence was presented that the Oakland section of Pittsburgh is a high-density, residential area and that many residents frequently travel in the course of their work. Further, the record satisfies us that Crossgate is virtually inaccessible by public transportation, transportation which many residents depend on. Since the Crossgate Inn is not a functional alternative to service from Webster Hall, we affirm the Commission's order extending service to Webster Hall.

We cannot, however, find support in the record for the Commission's order requiring Airlines to supply limousine service to Howard Johnson's.

Section 1502 of the Code, 66 Pa. C. S. §1502, provides in pertinent part:

No public utility shall, as to service, make or grant any unreasonable preference or advantage to any person, corporation, or municipal corporation, or subject any person, corporation, or municipal corporation to any unreasonable

prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference as to service, either as between localities or as between classes of service, but this section does not prohibit the establishment of reasonable classifications of service.

Howard Johnson's contended that Airlines provided an unreasonable preference to Crossgates by not giving the same service to Howard Johnson's.

Our careful review of the record discloses nothing but speculative, conjectural evidence of no probative value in support of Howard Johnson's claim of an unreasonable preference. For example, although Howard Johnson's manager testified that the motel's occupancy rate has declined slightly since the Webster Hall stop was eliminated, no evidence was offered causally connecting the lower occupancy rate with the unavailability of service. Howard Johnson's also claimed that it was at a "competitive disadvantage" due to the absence of limousine service to its facility and that, as a result, prospective guests had cancelled their reservations. On cross-examination, however, the manager admitted that he had no actual knowledge of such cancellations.

Further, Howard Johnson's survey of persons transported to Crossgates for limousine service lacks even the slightest degree of statistical validity. First, there was no verification by Howard Johnson's that all guests transported to Crossgates during the two-week period used the limousine service. Second, although no limousine service from Crossgates was available on Saturdays, the survey total included a number of guests transported to Crossgates on two Saturdays.

We reverse the Commission's order directing Airlines to provide additional service to Howard Johnson's.

ORDER

The order of the Pennsylvania Public Utility Commission, No. C-78030232, is affirmed; No. C-79030802, is reversed.

---

CONCURRING AND DISSENTING OPINION BY JUDGE BLATT:

I concur in the majority's affirmance of the Commission's order extending service to Webster Hall, but I must dissent from the reversal of the Commission's order requiring service to Howard Johnson's. I believe that there *was* substantial evidence to support the finding of the Commission that Howard Johnson's suffered a competitive disadvantage here, which the Commission properly believed should be remedied.

The majority has held here that the evidence presented by Howard Johnson's was speculative and conjectural, but, in so doing, it has adopted the role of factfinder and has usurped the responsibility of the Commission to evaluate the credibility of the witnesses and the weight to be given to their testimony. *County of Chester v. Pennsylvania Public Utility Commission*, 47 Pa. Commonwealth Ct. 366, 408 A.2d 552 (1979).

I believe that the testimony by the manager of Howard Johnson's as to the damage suffered by it due to the loss of clientele, although admittedly not unequivocal, was probative and could reasonably have been relied upon by the Commission. The informality and statistical validity of Howard Johnson's survey of persons using limousine service also raised a question of credibility to be determined by the Commission. In addition, there was evidence that Howard Johnson's was the only major Pittsburgh hotel which was not served by Airlines and that, inasmuch as Howard Johnson's was only about one-quarter mile from Crossgates, Airlines would suffer no great expense in providing the requested service.

I would, therefore, hold that substantial evidence existed to support the Commission's finding that lack of airport limousine service to Howard Johnson's placed it at a competitive disadvantage.