Commonwealth of Pennsylvania, Department of Transportation, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

Borough of Homewood and Borough of Big Beaver, Petitioners v. Pennsylvania Public Utility Commission, Respondent.

County of Beaver, Petitioner v. Pennsylvania Public Utility Commission, Respondent.

Argued May 11, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Stephen Dittman,* Assistant Counsel, with him *Herbert G. Zahn,* Assistant Counsel, *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for petitioner, Department of Transportation.

*David L. Gropp,* for petitioners, Borough of Homewood and Borough of Big Beaver.

*Eugene Morris,* County Solicitor, with him *Daniel M. D'Antonio,* Assistant County Solicitor, for petitioner, County of Beaver.

*Richard S. Herskovitz,* Assistant Counsel, with him *John B. Wilson,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent, Pennsylvania Public Utility Commission.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., December 30, 1983:

The Pennsylvania Department of Transportation (DOT), Borough of Homewood, Borough of Big Beaver and County of Beaver appeal a Pennsylvania Public Utility Commission order assessing costs of reconstruction and future maintenance of the Homewood Viaduct. We affirm.

The Commission determined that the rail-highway crossing was to be demolished and reconstructed, with the cost of said reconstruction to be assessed as follows: 50% against Conrail; 40% against DOT; 10% against Beaver County;[1] minor construction costs assessed to the Pennsylvania Turnpike Commission;

---

[1] The percentages allocated are identical to those in *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* 66 Pa. Commonwealth Ct. 609, 445 A.2d 851 (1982).

and $15,000 each assessed to Homewood and Big Beaver Boroughs.[2] Homewood, Big Beaver and the County were to share one-third of all future maintenance costs.

. On May 6, 1970, Homewood Borough, joined by Big Beaver Borough, initiated these proceedings by complaint, alleging that a rail-highway crossing[3] carrying an un-numbered public highway over and above three tracks of Penn Central Transportation Company (predecessor of Conrail) posed hazardous conditions to the safety of the traveling public.[4] The two boroughs relied on a 1921 Commission order directing the Pennsylvania Company (forerunner of the Pennsylvania Railroad Company) to construct at its own cost and expense the aforesaid above-grade viaduct to carry former State Highway Route 77 over and above said tracks and to provide a ramp to the then-active Pennsylvania station. Attendant costs of the Highway-approach relocation were allocated to the Pennsylvania Highway Department, with the costs of property damages assessed to Homewood Borough and Beaver County. In a 1922 order, the Commission directed Homewood Borough to maintain the station ramp, Highway Department to maintain the

---

[2] In 1979, Conrail estimated the reconstruction cost to be $2,300,000. Conrail has been ordered to perform the reconstruction.

[3] The 1921 construction of the subject viaduct was necessary at this location to alleviate dangerous conditions existing at several at-grade crossings due to heavy train and vehicular traffic.

[4] The original portion of the bridge is located entirely within Homewood Borough, having a length of approximately 567 feet. The Commission has directed this portion to be replaced. Conrail railroad tracks are located beneath this portion and Conrail's freight and passenger trains travel this portion of its main-line interstate commerce business between the eastern seaboard and the midwest. The newer part of the bridge is located partly within Homewood Borough and partly in Big Beaver Borough having a length of approximately 138 feet.

paving across the viaduct, and the Pennsylvania Company to maintain the viaduct.

In 1950, the Public Utility Commission directed the Pennsylvania Turnpike Commission to construct and maintain a three-span extension of the viaduct to pass over the new toll highway. The roadway paving was assigned to the Highway Department.

In 1954, the Commission ordered the deteriorated ramp portion of the structure to be closed to vehicular traffic and directed the Pennsylvania Railroad Company to erect vehicular barricades at each end of the ramp, remove the existing superstructure and construct a replacement pedestrian bridge which Homewood Borough was to maintain.[5] However, the ordered reconstruction work was never completed.

Our Court's scope of review is limited to determine whether constitutional rights have been violated, error of law committed or findings and conclusions are unsupported by substantial evidence. *Pennsylvania Electric Co. v. Pennsylvania Public Utility Commission*, 53 Pa. Commonwealth Ct. 186, 417 A.2d 819 (1980).

The Commission's exclusive jurisdiction over the construction of railroad-highway crossings in the Commonwealth is set forth in Section 2702(c) of the Public Utility Code, 66 Pa. C. S. §2702(c), as follows:

> [U]pon complaint, the commission shall have exclusive power after hearing, upon notice to all parties in interest . . . to order such cross-

---

[5] Prior to this order, the Highway Department relocated State Highway Route 77 to the east of the structure and the said state route no longer crossed the viaduct. DOT now avers that the old highway reverted to the borough although the Department of Highways was never relieved of its maintenance obligation. However, since 1954, DOT has made payments to Homewood Borough through the liquid fuel tax reimbursement program for those portions of the abandoned highway.

ing heretofore or hereafter constructed to be relocated or altered, or to be suspended or abolished upon such reasonable terms and conditions as shall be prescribed by the commission. . . . The commission may order the work of construction . . . [or] alteration . . . of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth.[6]

The Commission has exclusive authority to make determination of allocation of costs involved in providing for the safety and public use of all bridges over railroad tracks within the Commonwealth. *Department of Transportation v. Public Utility Commission*, 3 Pa. Commonwealth Ct. 405, 410, 283 A.2d 313, 316 (1971). The Commission has broad powers to allocate and assess costs in railroad-highway crossing cases under Section 2704(a) of the Public Utility Code, 66 Pa. C. S. §2704(a), which states:

[C]ost of construction . . . [or] alteration . . . of such crossing . . . shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.[7]

---

6 Sections 2702 and 2704 of the Public Utility Code contain substantially the same language as former sections 409 and 411 of the Public Utility Code, Act of May 29, 1937, P.L. 1053, *as amended*, 66 P.S. §§1179, 1181. Sections 409 and 411 were in effect when the instant case was instituted.

7 Since 2704(a) does not clearly authorize the Commission to allocate maintenance costs, the Commission's power to regulate maintenance is limited to effectuating the prevention of accidents and promotion of public safety as stated in 2702(b).

It has long been established that, in apportioning costs in highway-rail crossing cases, the Commission is not limited to any fixed rate but takes all relevant factors into consideration, with the fundamental requirement being that its order be just and reasonable. *Department of Transportation v. Pennsylvania Public Utility Commission*, 21 Pa. Commonwealth Ct. 407, 413, 346 A.2d 371, 375 (1975). In a case such as this, our Court will not exercise its independent judgment on the record or weigh conflicting evidence. *County of Chester v. Pennsylvania Public Utility Commission*, 47 Pa. Commonwealth Ct. 366, 370, 408 A.2d 552, 553 (1979). Our inquiry is directed to whether there is substantial evidence to support the Commission's order as to the allocation of costs of reconstruction and the assignment of responsibility for future maintenance of the subject viaduct. Findings of fact made by the Commission which are supported by substantial evidence are conclusive and may not be disturbed on appeal. *County of Chester*, 47 Pa. Commonwealth Ct. at 370, 408 A.2d at 553.

DOT asserts that the 40% assessment of reconstruction (exclusive of spans over the Turnpike) is unreasonable because the findings of fact are unsupported by the record. The Commission found DOT's interest and involvement to be significant since DOT had a past and presently continuing obligation for paving maintenance under the 1921 and 1950 orders. Furthermore, DOT has a continuing responsibility for the safe passageway of the traveling public[8] over the Commonwealth highways[9] arising from its adminis-

---

[8] The record reveals that several local and state roads converge on the viaduct. A 1970 two-day traffic count indicated 978 vehicles and 69 pedestrians used the bridge during a 14-hour daytime period.

[9] The Commission's assessment against DOT is permitted even though the road in question is not currently a designated state

trative and advisory functions, *Department of Transportation,* 3 Pa. Commonwealth Ct. at 413, 283 A.2d at 317, and a state highway traversed the subject bridge until 1954 and the new state highway traffic has occasionally been detoured across the subject viaduct because of state highway emergencies.[10]

DOT argues that the Commission's findings of fact are not supported by the substantial evidence because the record shows it has only a paving responsibility and not a construction responsibility according to the 1921 order directing the Pennsylvania Company to maintain the structure. Other cases illustrate that the Commission has placed a duty upon DOT to share in the reconstruction costs of such a structure built by a railroad. *Department of Transportation v. Pennsylvania Public Utility Commission,* 3 Pa. Commonwealth Ct. 473, 284 A.2d 155 (1971) (Penn-DOT ordered to pay $150,000 out of $368,000); *Pennsylvania Public Utility Commission v. Department of Transportation,* 21 Pa. Commonwealth Ct. 415, 346 A.2d 376 (1975) (PennDOT assessed 90% of the reconstruction costs).

Also, the governmental bodies and DOT contend that the Commission's findings of fact are not supported by the substantial evidence because the Commission failed to consider the issue of deferred main-

---

highway. *See Department of Transportation v. Pennsylvania Public Utility Commission,* 64 Pa. Commonwealth Ct. 224, 439 A.2d 1301 (1982), *allocatur denied* May 25, 1982; *Department of Transportation,* 3 Pa. Commonwealth Ct. at 478, 284 A.2d at 158. Also, Section 2702(c) gives the Commission jurisdiction over the Commonwealth to impose costs under Section 2704 regardless of the highway designation.

[10] Finding of fact 19 erroneously stated that DOT detoured traffic over the viaduct. However, this error is not fatal to the Commission's final allocation of costs. DOT still has a substantial interest in those vehicles re-routed off the state highway because a reduction of congestion results from the detours.

274

tenance. However, in the 1971 and 1974 Commission orders,[11] it is shown that the Commission did consider the issue of actual causation for the bridge's deterioration. The record fails to support a conclusion that the need for reconstruction is due solely to deferred maintenance. *See Department of Transportation,* 3 Pa. Commonwealth Ct. at 409, 283 A.2d at 315.

Homewood and Big Beaver Boroughs and Beaver County contend that the Commission's order was unreasonable and that it abused its discretion when allocating the county 10% of the reconstruction costs and $15,000 to each borough, along with assigning all three bodies one-third of the future maintenance costs. In resolving this dispute, we must decide whether the Commission order to reconstruct the bridge will result in substantial local improvement or distinct benefit for its residents. *County of Chester,* 47 Pa. Commonwealth Ct. at 370, 408 A.2d at 554. The record reveals that a reconstructed bridge would provide for the general good of the motorists and pedestrians, who will experience better traffic control with the reduction of traffic congestion, more efficient and safer fire, police, bus and ambulance service, and elimination of the hazard of falling bridge concrete. Because the local governments will derive

[11] In its August, 1971 order, the Commission concluded:
Neither are we satisfied that an adequate conscientious program of maintenance, pursued over the years in compliance with the obligations imposed in outstanding orders of this Commission and its predecessor body, would have tolerated the progressive deterioration of the various components of the structure to their present state, including the curbs, sidewalks and roadway surface on the traveled way.
In its June 20, 1974 order, the Commission noted that a Penn Central engineer stated that the type of construction involved did not lend itself well to routine maintenance.

future benefits from the reconstruction, the token assessment for reconstruction and future maintenance is just and reasonable. *See County of Chester; Pennsylvania Public Utility Commission v. Department of Transportation*, 2 Pa. Commonwealth Ct. 144, 276 A.2d 573 (1971).[12] Thus, we find no abuse of discretion in the Commission's action.

Accordingly, we affirm.

ORDER

The order of the Pennsylvania Public Utility Commission at Docket No. C-00018925, dated March 17, 1982, is affirmed.

---

[12] Beaver County further contends that the Commission did not consider the ability of the parties to pay the subject costs. The County argues that, since the September 12, 1980 hearing on allocation of costs, they have experienced a deficit which amounts to a change of circumstances. Because the County has raised this issue for the first time on appeal, this issue is waived. *City of Pittsburgh v. Department of Transportation*, 490 Pa. 264, 270 n. 7, 416 A.2d 461, 464 n. 7 (1980). Moreover, the subject governing bodies have sufficient revenue-raising ability to offset any deficit.