Octoraro Railway, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

Argued June 7, 1984, before Judges CRAIG, DOYLE and BLATT, sitting as a panel of three.

*Randy L. Sebastian,* with him, *Randall C. Schauer, MacElree, Harvey, Gallagher, O'Donnell & Featherman, Ltd.,* for petitioner.

*Charles F. Hoffman,* Chief Counsel, with him, *John B. Wilson,* Deputy Chief Counsel, and *John J. Gallagher,* Assistant Counsel, for respondent.

*John S. Halsted,* County Solicitor, with him, *Janet M. Colliton,* Assistant County Solicitor, and *Norman J. Pine,* Assistant County Solicitor, for intervenor, the County of Chester.

*Vincent J. Walsh, Jr.,* with him, *Robert C. Wert,* and *G. Roger Bowers,* for intervenor, Southeastern Pennsylvania Transportation Authority.

OPINION BY JUDGE DOYLE, September 24, 1984:

Petitioner, Octoraro Railway (Octoraro), appeals from an order of the Pennsylvania Public Utility Commission (Commission) affirming an administrative law judge's finding that he did not have the power to rule on the validity of a lease agreement between Southeastern Pennsylvania Transit Authority (SEPTA) and Chester County (County), and a sublease agreement between the County and Petitioner.

On March 1, 1983, the administrative law judge (ALJ), after previously ordering the Pennsylvania Department of Transportation (DOT) to replace the bridge carrying State Highway A150 (Traffic Route 796) over the SEPTA tracks with a metal plate arch, allocated the construction costs of the improvement as follows:

|  | *Percent* | *Cost* |
|---|---|---|
| DOT | 78% | $155,763.17 |
| SEPTA | 15% | 29,954.46 |
| Octoraro | 5% | 9,984.82 |
| Penn Township | 1% | 1,996.96 |
| County | 1% | 1,996.96 |
| Total |  | $199,696.37 |

The costs assigned to SEPTA and the County were passed on to Octoraro pursuant to the lease agreement between SEPTA (Lessor) and the County (Lessee), and the sublease between the County (Sublessor) and Petitioner (Sublessee). Both the lease and sublease contain a provision which states that:

> During the term of this lease or any renewal thereof, Lessee shall assume and be responsible for any obligation flowing to Lessor as a result of obligations formerly assigned to the Penn Central Transportation Co.[1] and which may be imposed under the provisions of Pennsylvania and Maryland Public Utility Laws and any orders issued thereunder with respect to crossing of the Railroad Premises by public highways or utilities.

In his decision, the ALJ stated that he could not rule on the validity of the lease agreement between the parties. Octoraro excepted to this portion of the decision and the Commission, finding no merit to this exception, affirmed the ALJ's decision. The appeal to this Court followed.[2]

Petitioner argues that the Commission, under Section 508 of the Public Utility Code (Code), 66 Pa. C. S. §508, has the power to revise contracts entered into between public utilities and municipal corporations. On the other hand, Respondent (Commission) and Intervenor (SEPTA) argue that the Commission's power to revise contracts involving a rail-highway cross-

---

[1] In 1976, SEPTA acquired the line from the trustees of the Penn Central Transportation Company.

[2] Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are unsupported by substantial evidence. *Department of Transportation v. Pennsylvania Public Utility Commission*, 79 Pa. Commonwealth Ct. 266, 409 A.2d 1149 (1983).

ing is governed by Section 2704(a) of the Code, 66 Pa. C. S. §2704(a), and that Section 508 does not apply to these particular contracts.

Under Section 2704(a) of the Code, the Commission has the authority to allocate the costs of reconstructing the bridge. Section 2704(a) states, in pertinent part:

> [C]ost of construction . . . [or] alteration . . . of such crossing . . . shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

It has been held that the Commission may allocate construction costs between the parties regardless of any previous agreement unless the parties have mutually agreed on an allocation of the construction costs and those costs have already been paid. *City of Philadelphia v. Philadelphia Electric Company*, Pa. , 473 A.2d 997 (1984). In the present case, however, the agreement between the parties does not privately allocate costs but rather indemnifies SEPTA and the County for expenses assessed by the Commission. The agreement leaves the allocation of the costs to the Commission and provides that Petitioner will assume any costs allocated to SEPTA or the County. Consequently, Section 2704(a) is not applicable and does not operate as a bar to the Commission's authority to assess costs contrary to the lease agreement.

We note in addition that under Section 508 of the Code, the Commission has discretionary power to vary, reform or revise contracts entered into between public utilities and municipal corporations. Section 508 states, in pertinent part:

> The commission shall have power and authority to vary, reform, or revise, upon a fair, reasonable, and equitable basis, any obligations, terms, or conditions of any contract heretofore or hereafter entered into between any public utility and any . . . municipal corporation, which embrace or concern a public right, benefit, privilege, duty, or franchise, or the grant thereof, or are otherwise affected or concerned with the public interest and the general well-being of this Commonwealth.

Since Section 508 provides the Commission with the power to modify contracts, the ALJ's finding that he did not have the authority to rule on the validity of the agreements is in error.

Lastly, Petitioner asserts that the lease agreement between Petitioner and the County and the lease agreement between SEPTA and the County are invalid because the agreements have never been approved by the Commission pursuant to Section 507 of the Code, 66 Pa. C. S. §507. Since this argument was raised for the first time in Petitioner's brief and was not assigned as error in this appeal, it was waived by the Petitioner. *McAllister v. Department of Public Welfare,* 41 Pa. Commonwealth Ct. 31, 398 A.2d 248 (1979); *see* 2 Pa. C. S. §703 and Pa. R.A.P. 1551(a).

For the foregoing reasons, we reverse the Commission's order and remand for consideration of whether the circumstances here warrant exercise of the Commission's discretion under Section 508.

### Order

Now, September 24, 1984, the order of the Pennsylvania Public Utility Commission in the above captioned matter, Docket No. I-78060297, dated June 27, 1983, is hereby reversed and the matter remanded for disposition consistent with this opinion. Jurisdiction is relinquished.

CONCURRING OPINION BY JUDGE BLATT:

Although I concur in the result reached by the majority here, I am not convinced that the rental agreements between the parties did not in fact allocate construction costs. Moreover, I believe that, even if we were to find that the parties had acted so as to preclude allocation of construction costs by the Commission under Section 2704(a) of the Code, 66 Pa. C. S. §2704(a), the Commission would still retain the authority to vary, reform or revise these agreements pursuant to Section 508 of the Code, 66 Pa. C. S. §508.

Preliminarily, I would note that the parties here have not fulfilled their obligations under the leasing agreements—*i.e.* Octoraro has not paid its "allocated" share towards the construction costs. And, in *City of Philadelphia v. Philadelphia Electric Company,* Pa.    , 473 A.2d 997 (1984), our Supreme Court held that the Commission could exercise its authority to allocate costs under Section 2704(a) of the Code where the parties had not reached an agreement concerning the allocation of construction costs *or* where the parties had such an agreement *but had not executed it.*

I believe that the parties here did reach an agreement to allocate costs, albeit through an indemnification clause, *but have yet to act upon it.* The Commission's allocation of costs pursuant to Section 2704(a) of the Code, therefore, was proper here.

In addition, I would have specifically concluded that the Commission retains its power to vary, reform or revise a contract between a public utility and a municipal authority allocating construction costs even where it is precluded from allocating those costs itself under Section 2704(a) of the Code. The General Assembly granted the Commission broad powers to review any contracts between a public utility and a municipal corporation "which embrace or concern a public right, benefit, privilege, duty, or franchise, or the

grant thereof, or are otherwise affected or concerned with the public interest and the general well-being of this Commonwealth.'' Section 508 of the Code, 66 Pa. C. S. §508. And, inasmuch as Section 2704(a) does not specifically prohibit review of a contract allocating costs between a public utility and a municipality, I am not convinced that such review would ever be precluded.