**NORFOLK SOUTHERN RAILWAY COMPANY, Petitioner**

v.

**PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 30, 2009.

Decided April 30, 2009.

Benjamin C. Dunlap, Jr., Harrisburg, for petitioner.

Adam D. Young, Asst. Counsel, Harrisburg, for respondent.

Christina N. Hinkson, Acting Deputy City Solicitor, Harrisburg, for intervenor, City of Harrisburg.

Eric J. Jackson, Asst. Counsel, Harrisburg, for intervenor, Department of Transportation.

BEFORE: McGINLEY and LEAVITT, Judges, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEAVITT.

Norfolk Southern Railway Company (Norfolk Southern) petitions for review of an adjudication of the Pennsylvania Public Utility Commission (PUC) that ordered it primarily liable for the repair and maintenance of a railroad-highway crossing in the City of Harrisburg (City). At issue is a retaining wall that runs along the highway portion of the crossing and is located both within and outside Norfolk Southern's right-of-way for the railroad portion of the crossing. Finding no abuse of discretion by the PUC in its allocation of responsibility for future maintenance of the wall, we will affirm.

The subject railroad-highway crossing[1] is located in the City of Harrisburg, where Norfolk Southern's rail lines cross over State Route 3018, or Herr Street.[2] In 1890 the crossing was at-grade. In approximately 1903, the Pennsylvania Railroad altered the crossing from at-grade to grade-separated, to make Herr Street pass underneath the railroad tracks. To effect this new configuration, excavation was done and retaining walls constructed along both sides of Herr Street. With the exception of the street itself, the Pennsylvania Railroad owned all land within the crossing, including the land on which the retaining walls were built.

By order of January 18, 1938, the PUC ordered the Pennsylvania Railroad to improve the Herr Street crossing by constructing new bridge spans and to undertake continuing responsibility for their maintenance. However, that order was silent with respect to maintenance of the remainder of the crossing, including the retaining walls.

The Pennsylvania Railroad sold its facilities to Penn Central Corporation, which continued to own all property adjacent to

1. A "crossing" for purposes of the Public Utility Code is an intersection of two or more public utilities. *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility Commission,* 140 Pa.Cmwlth. 270, 592 A.2d 797, 800 n. 2 (1991). A "railroad-highway crossing" is an intersection of a

highway with a railroad right-of-way, upon which railroad tracks lie, and can be at, above or below the grade of the railroad tracks. *Id.*

2. In 1950, the Department of Transportation (PennDOT) adopted Herr Street as a state highway, with a 60–foot wide right-of-way.

the retaining walls until 1979, when a portion of the adjacent land was sold to Mark Cramer and developed into a parking lot. Thereafter, Amtrak took possession of the railroad facilities at the crossing, which it transferred to Conrail in 1985. In 1992, Conrail sold other land adjacent to the retaining walls to the City, but those deeds were silent as to maintenance of the retaining walls. In 1999, Norfolk Southern acquired ownership of the railroad facilities from Conrail.

Currently, the crossing consists of Herr Street, which runs in an east-west direction, and the railroad's bridge, which runs north-south. On average, 14,095 automobiles and 423 trucks travel under the bridge each day, and 100 freight trains and two passenger trains pass over the bridge. The bridge itself is composed of steel superstructures resting on masonry abutments approximately 13 feet above street level. Attached to the abutments are retaining walls that run parallel to both sides of Herr Street. These walls are approximately 12 feet high where they adjoin the abutments and taper to approximately 7.5 feet high where they end. The walls lie primarily within Norfolk Southern's right-of-way. However, on the western approach to the crossing, where land in the railroad's right-of-way was sold, not all of the retaining walls are located on land owned by Norfolk Southern. At the base of the walls, on both sides of Herr Street, lie eight foot wide sidewalks.

When Pennsylvania Railroad built the crossing, it placed a brick façade on the abutments and retaining walls. The brick facing was anchored to the retaining walls with steel straps. Over time, water infiltrated behind the brick façade and caused the steel anchor straps to rust. As a result, portions of the brick facing have separated from the retaining walls and collapsed onto the sidewalk. When the

City discovered this problem, it became concerned for pedestrian and motorist safety and notified the PUC. In response, the PUC launched an investigation, which determined that the retaining walls are structurally sound and the bridges are capable of carrying train traffic without danger of collapse. Nevertheless, the retaining walls were found to be deteriorating and required attention.

Norfolk Southern prepared a repair plan for the retaining walls, which calls for removing the loose brick and replacing it with formed concrete. Norfolk Southern estimates that it will cost $145,000 to repair the portion of the retaining walls located within its right-of-way, and $85,000 to repair the area outside of its right-of-way. Reproduced Record at 63a–64a (R.R. ——). The PUC directed an Administrative Law Judge (ALJ) to conduct a hearing on how to allocate costs for the repair and future maintenance of the retaining walls.

On March 5, 2008, representatives from PennDOT, the City, Norfolk Southern and the Commission's Bureau of Transportation and Safety attended a hearing before the ALJ. Norfolk Southern agreed to perform all of the necessary repair work for the entire length of the retaining walls on both sides of Herr Street, and to bear the cost for such repairs for the portions of the retaining walls within its right-of-way. Norfolk Southern further agreed to assume responsibility for future maintenance of the retaining walls within its right-of-way, and the superstructure of the bridge. PennDOT agreed to maintain the roadway of Herr Street at the crossing between the curb lines. The City agreed to maintain the sidewalks, curbs and street lighting at the crossing and to remove snow, ice and trash from the sidewalks. The parties memorialized their agreements in a Stipula-

tion of Settlement filed with the PUC on March 7, 2008.

As a result of the parties' agreements regarding repairs and maintenance, the ALJ was left to determine (1) who should pay for the repair work to the portions of the retaining walls located outside Norfolk Southern's right-of-way, and (2) who shall maintain the retaining walls outside the railroad's right-of-way once the repairs are completed.

Beginning with the cost of the repair work, the ALJ recommended that Penn-DOT and the City each reimburse Norfolk Southern for 50 percent of the costs to repair the portions of the retaining walls located outside Norfolk Southern's right-of-way, up to a maximum of $42,500 each. In making that allocation, the ALJ analyzed the relative benefit that PennDOT and the City will receive from repair of the crossing. The ALJ explained that the crossing provides a safe and unimpeded interface between rail and vehicular traffic, thereby benefiting both PennDOT and the City. Additionally, the retaining walls allow Herr Street to remain open to pedestrians, and they support portions of the adjacent parking lot. For these reasons, the ALJ recommended that PennDOT and the City share in the costs of repair.

Turning next to future maintenance responsibilities, the ALJ recommended that Norfolk Southern assume responsibility for maintaining the entire length of the retaining walls, both within and outside its right-of-way. The ALJ reasoned that dividing the maintenance responsibility among the parties was not practical and would lead to disputes, particularly because the property lines were not clear. As noted by the ALJ, Norfolk Southern and PennDOT were able only to approximate the property line for Norfolk Southern's right-of-way. The ALJ concluded that it was reasonable for Norfolk Southern to bear responsibility for maintaining the entire length of the retaining walls since Norfolk Southern had already agreed to maintain the majority of the walls.

Recognizing that the City has an interest in keeping the adjoining sidewalks free of collapsing walls, the ALJ recommended that the City reimburse Norfolk Southern 10 percent of future maintenance costs. Noting that over two-thirds of the walls, where they were tallest, were located within Norfolk Southern's right-of-way, he concluded that it was "just and reasonable" that Norfolk Southern bear 90 percent of the cost of future maintenance.[3]

Norfolk Southern filed exceptions to the ALJ's Recommended Decision.[4] In two of these exceptions, Norfolk Southern requested that additional findings of fact be acknowledged based upon the evidence adduced at the hearing. The PUC granted these exceptions and took administrative notice of the following finding of fact:

> PennDOT conducted a survey, which determined the property line between that property owned by Norfolk Southern and private owners, which line is just a few feet west of the edge of the westernmost bridge span.

PUC Opinion at 6 (citations omitted).[5]

Norfolk Southern also filed exceptions to the ALJ's allocation of repair and

---

3. The ALJ recommended that Norfolk Southern's repair plan be modified to include application of a graffiti-resistant sealer to the poured concrete facing. Norfolk Southern has not challenged this aspect of the ALJ's recommendation, which was adopted by the PUC's final order.

4. PennDOT and the City also filed exceptions, which were denied. Neither PennDOT nor the City petitioned for review of the PUC's order, although both parties have intervened in the instant appeal.

5. The PUC also took administrative notice that "[t]he entire length of the abutments and

maintenance responsibilities. Norfolk Southern objected to being assigned responsibility for future maintenance of the retaining walls outside of its right-of-way on the western approach to the crossing.[6] Norfolk Southern argued that maintenance for the western portion of the retaining walls should be assigned either to Penn-DOT or to the City. The PUC denied Norfolk Southern's remaining exceptions and adopted the ALJ's recommended allocation of repair and maintenance responsibilities. Norfolk Southern now petitions for this Court's review.[7]

On appeal, Norfolk Southern argues that the PUC abused its discretion. First, Norfolk Southern challenges the PUC's decision to assign it the responsibility for the maintenance of the retaining walls because it derives no benefit from those parts of the walls that lie outside its right-of-way. It believes the PUC should have allocated maintenance responsibility by ownership. Second, Norfolk Southern contends that if this Court affirms the

PUC's assignment of maintenance responsibilities, it should allocate an additional 10 percent of the maintenance costs to Penn-DOT since 20 percent of the retaining walls lie outside Norfolk Southern's right-of-way.

 We begin with a review of the applicable law. Section 2704(a) of the Public Utility Code (Code) vests the PUC with exclusive jurisdiction to allocate costs and maintenance responsibility of railroad-highway crossings to any public utility or municipal corporation concerned, or to the Commonwealth. 66 Pa.C.S. § 2704(a).[8] The relevant factors traditionally considered in allocating the costs include, but are not limited to: (1) the party who originally built, owned and maintained the crossing; (2) the relative benefits initially conferred by the construction of the crossing; (3) the party who is responsible for the deterioration of the crossing; and (4) the benefits accrued from the reconstruction of the crossing. *Wheeling & Lake Erie Railway Co. v. Pennsylvania Public Utility Com-*

---

the adjacent retaining walls on which the brick facing was placed are within Penn-DOT's legal right of way." PUC Opinion at 5. This additional factual finding is not directly relevant to the issues on appeal.

6. The retaining walls on the eastern side of the crossing are not at issue.

7. Appellate review of an order of the PUC is limited to determining whether a constitutional violation or error in procedure has occurred, the decision is in accordance with law, and the necessary findings of fact are supported by substantial evidence. *AT & T v. Pennsylvania Public Utility Commission*, 558 Pa. 290, 301, 737 A.2d 201, 207 (1999). The Pennsylvania Supreme Court has interpreted the "in accordance with law" standard to "encompass, *inter alia*, review for manifest and flagrant abuse of discretion or purely arbitrary execution of the agency's duties or functions." *Id.* at 306 n. 9, 737 A.2d at 210 n. 9.

8. Section 2704(a) of the Code states:

(a) General rule.—The compensation for damages which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this part, shall, after due notice and hearing, be ascertained and determined by the commission. Such compensation, as well as the cost of construction, relocation, alteration, protection, or abolition of such crossing, and of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, by the public utilities, municipal corporations, ... or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties.

66 Pa.C.S. § 2704(a).

*mission,* 778 A.2d 785, 793 (Pa.Cmwlth. 2001). These factors are neither mandatory nor exclusive of other considerations. *AT & T v. Pennsylvania Public Utility Commission,* 558 Pa. 290, 305–306, 737 A.2d 201, 209 (1999). As long as the PUC's allocation of costs is just and reasonable and has a sound legal and factual basis, it must be affirmed. *Wheeling & Lake Erie Railway Co.,* 778 A.2d at 793. It is not the province of this Court to substitute its judgment for that of the PUC. *Department of Transportation v. Pennsylvania Public Utility Commission,* 79 Pa.Cmwlth. 266, 469 A.2d 1149, 1152 (1983). With these principles in mind, we turn to Norfolk Southern's challenge to the PUC's allocation of the maintenance costs.

In its first issue, Norfolk Southern challenges the PUC's decision to assign it the responsibility for the maintenance of all the retaining walls, even those parts of the walls not owned by Norfolk Southern. It offers several arguments in support of its position that the PUC abused its discretion in this regard.

Norfolk Southern first contends that either the City or PennDOT should be responsible for maintaining the portions of the retaining walls that lie outside the railroad's right-of-way because they, not the railroad, benefit from those portions of the walls. The retaining walls also benefit the property owners whose land is supported by the retaining walls. For this reason, Norfolk Southern argues that if

the City is assigned responsibility for future maintenance of these parts of the walls, it can recover its costs from the adjacent landowners.

Norfolk Southern is correct that consideration of benefits is one factor to be considered in allocating future maintenance costs for a crossing. However, Norfolk Southern places too much emphasis on this one factor. This Court has expressly rejected the notion that "the allocation of . . . reconstruction costs must be based solely on the benefits accrued to the parties." *Wheeling & Lake Erie Railway Co.,* 778 A.2d at 793–794. In any event, Norfolk Southern also benefits from the grade-separated crossing, of which the retaining walls are an integral part, because its trains can move across Herr Street unimpeded by vehicular or pedestrian traffic.

Had the PUC used only a benefit analysis, it is not correct, as Norfolk Southern argues, that the City could recapture its maintenance costs from the adjoining property owners whose land is directly benefited by the retaining walls. Norfolk Southern argues that the City is authorized to make such assessments under The Third Class City Code (Code), Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701. We disagree.

■■ Section 2930 of The Third Class City Code grants broad authority to a city to grade, pave, macadamize or otherwise improve any street or part thereof, including sidewalks. 53 P.S. § 37930.[9] Assum-

---

9. Section 2930 of The Third Class City Code states:

Every city may grade, pave, macadamize or otherwise, improve any street, or part thereof, and the sidewalks thereof when included as a part of the improvement, have the same set with curbstone, and provide for the drainage thereof. Every city may also provide for the improvement of any highway, or street, or any sections or parts thereof, in length, in the space between the

curb, gutter, or actual carriage-way line and the property line, either by an original work or improvement thereon, or by a change, repair, renewal, or alteration in the said street or curb, or in parking spaces, or shade trees, or by changing, altering, renewing, replanting, pruning, or otherwise improving the same, in any or all of said particulars.

53 P.S. § 37930.

ing, *arguendo,* that Section 2930 applies to the retaining walls, the costs of such improvements "shall be paid, in whole or in part, by the city, or by the owners of real estate bounding and abutting thereon." Section 2931 of The Third Class City Code, 53 P.S. § 37931. However, a municipality may assess abutting property owners only for the costs of original improvements, such as the initial paving of a street, and not their maintenance. *Hammett v. Philadelphia,* 65 Pa. 146, 155 (1869). Once the street has been opened and paved,

> all the particular benefits to the locality derived from the improvements have been received and enjoyed. Repairing streets is as much a part of the ordinary duties of the municipality—for the general good—as cleaning, watching and lighting.

*Id.* at 156. It is the public generally that benefits from the sidewalks and from the aesthetic value of a refurbished crossing on one of the main arteries into the City. In short, local assessments may not be imposed for improvements that are either expressed or appear to be for general public benefit. *Id.* at 157.

■ Norfolk Southern next contends that the PUC was simply wrong in concluding that it would be "unworkable" to assign the City and PennDOT maintenance of the western portion of the retaining walls. In support, Norfolk Southern points to a survey conducted by PennDOT, which Norfolk Southern contends shows the exact location of the property line between its right-of-way and the adjoining parcels. The property line lies three feet west of the edge of the westernmost bridge span. Such a division would be consistent with what the PUC has done in other factually similar cases. Norfolk Southern's position is unavailing for two reasons.

First, there is no definitive property line three feet west of the bridge structure. In its adjudication, the PUC stated that Norfolk Southern's property line was "just a few feet west of the edge of the westernmost bridge span." PUC Adjudication at 6. "A few" does not equal "three." Moreover, the PUC's approximation, taken from PennDOT's survey, is in accord with the testimony of the various witnesses at the hearing that the property line is "a few feet" from the western span, R.R. 140, "falls somewhere where that vegetation is growing at the top of the structure," R.R. 141a, "looked to be three maybe four feet off the west side of the bridge," R.R. 189a, or "would be several feet out from the bridge. Whether that is 3 feet or 4 feet or 5 feet, I couldn't be that precise." R.R. 196a. That the PUC declined to rely on such imprecise evidence about the property boundaries was not error.

■ Second, whether the PUC's opinion in this case is inconsistent with its prior opinions is irrelevant. As this Court has pointed out,

> [i]t is not the duty of this Court to ensure that the PUC follows PUC precedents as to evidentiary sufficiency. The duty of this Court is to review *this* case to determine if there is substantial evidence in the record to support the PUC's determination. The weight of the evidence presented is for the PUC to determine in each case and it is quite outside our power to make comparison "weighings" of prior PUC decisions to see if this case "follows" those prior rulings. Any failure by the PUC to follow its prior evidentiary standards, if in fact there is a failure, is not an error of law subject to our review.

*Philboro Coach Corp. v. Pennsylvania Public Utility Commission,* 67 Pa.Cmwlth. 176, 446 A.2d 725, 727 (1982) (emphasis in original).

Norfolk Southern argues, further, that it was inconsistent for the PUC to divide the cost of repairing the retaining walls between the railroad and the City or PennDOT by approximate ownership but not to use that approach for future maintenance.[10] Stated another way, if the City and PennDOT are each responsible for half of the repair costs for those portions of the walls outside Norfolk Southern's right-of-way, why can they not each be held responsible for half of the future maintenance costs for those portions of the walls?[11]

We disagree that the PUC's decision is internally inconsistent. Norfolk Southern's own repair plan and cost estimate set forth the exact dollar amount for the costs to repair the retaining walls within its right-of-way ($145,000) and outside its right-of-way ($85,000). The $85,000 amount was easily divisible once the PUC determined that the City and PennDOT should each be responsible for half of that cost. By contrast, the costs for future maintenance are wholly undetermined. In any case, the wall is one structure; there is no reason to believe that deterioration, when it develops, will not cross ownership lines, assuming those lines could be definitively determined. It is logical to charge one party, regardless of which one, to be responsible for the wall's future maintenance. PUC chose the party with the largest ownership interest; this does not represent an abuse of discretion.

In its second principal issue, Norfolk Southern argues that even if this Court accepts the PUC's assignment of maintenance responsibility to the railroad, it should allow Norfolk Southern to recapture more of its costs, set by the PUC at a 10 percent recapture from the City. Using a highly technical calculation of the surface area of the retaining walls, Norfolk Southern concludes that 2,083 square feet of the retaining walls are located outside of its right-of-way and 8,771 square feet within its right-of-way. This equates to 19.2 percent of the entire surface area falling within Norfolk Southern's right-of-way; Norfolk Southern argues that the future maintenance cost for the additional 9.2 percent, rounded up to 10 percent, should be assigned to PennDOT.

We reject this contention for two reasons. First, the PUC's allocation of part of the future maintenance costs to the City was based on a number of factors, including benefits from, and not just location of, the retaining walls. The ALJ did an approximation because the precise boundary lines were not clear.[12] Second, the ALJ assigned the City 10 percent of maintenance because it would be "just and reasonable." ALJ Recommended Decision at 29. The City will bear this burden even if the repairs are made entirely to portions

---

10. The City, as intervenor, joins in this portion of Norfolk Southern's argument.

11. Norfolk Southern argues that the PUC erred by looking to Section 521 of the State Highway Law, Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. § 670–521, which states that PennDOT does not assume responsibility for pre-existing structures within its right-of-way when it takes over a municipal street. It is true that the PUC cited Section 521 as support for general legislative intent in this area, however the PUC also noted that it was not bound by the State Highway Law. It is clear that Section 521 was cited only for persuasive authority.

12. Essentially, the ALJ estimated that "approximately two thirds of the entire length of the abutments and retaining walls are located within Norfolk Southern's right-of-way." ALJ Recommended Decision at 29. Because the highest parts of the walls fall within the right-of-way, "Norfolk Southern should ... bear most of the maintenance costs." *Id.*

of the retaining walls that fall within Norfolk Southern's right-of-way.

In summary, we hold that the PUC's allocation of future maintenance responsibilities to Norfolk Southern achieves a fair and workable result in this case. As it stands, each party involved will bear some responsibility for repairing and maintaining the different components of the crossing, including not just the retaining walls but also the roadway, curbs, sidewalks and street lighting. The vast majority of the retaining walls lie within Norfolk Southern's right-of-way, and it was Norfolk Southern's predecessors in interest that constructed the retaining walls and, presumably, allowed the brick façade to deteriorate. On this record, it was neither unjust nor unreasonable for the PUC to assign responsibility to Norfolk Southern for future maintenance of the retaining walls with a monetary contribution from the City.

For all of the foregoing reasons, the order of the PUC is affirmed.

### *O R D E R*

AND NOW, this 30th day of April, 2009, the order of the Pennsylvania Public Utility Commission in the above-captioned matter, dated July 17, 2008, is AFFIRMED.